# In the United States Court of Federal Claims

**No. 19-945C**
**Filed: December 18, 2019**
**Redacted Version Issued for Publication: January 14, 2020[1]**

* * * * * * * * * * * * * * * * * *

|  |  |
|---|---|
| **VETERAN SHREDDING, LLC,** | * * * * * * * * * * * * * |
| **Plaintiff,** | |
| **v.** | **Pre-Award Bid Protest; Cross-Motions for Judgment on the Administrative Record; Standing; Rule of Two Doctrine; Service-Disabled Veteran-Owned Small Business.** |
| **UNITED STATES,** | |
| **Defendant.** | |

* * * * * * * * * * * * * * * * * *

**Joseph A. Whitcomb**, Whitcomb, Selinsky, PC, Denver CO, for protestor.

**Igor Helman**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him were **Douglas K. Mickle**, Assistant Director, Commercial Litigation Branch, **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch, and **Joseph H. Hunt**, Assistant Attorney General, Civil Division. Of counsel was **Natica Chapman Neely**, Staff Attorney, Department of Veterans Affairs, Office of General Counsel, District Contracting National Practice Group, Jackson, MS.

# O P I N I O N

**HORN, J.**

Protestor, Veteran Shredding, LLC, is a Minnesota-based limited liability company and a service-disabled veteran-owned small business (SDVOSB). Protestor filed the above-captioned pre-award bid protest[2] to challenge Solicitation No. 36C26319Q0276 (the '276 Solicitation) for document destruction services at the Minneapolis Veterans Affairs Healthcare System (MVAHCS) issued as a 100% small business set-aside and

---

[1] This Opinion was issued under seal on December 18, 2019. The parties were asked to propose redactions prior to public release of the Opinion. This Opinion is issued with some of the redactions that the parties proposed in response to the court's request. Words which are redacted are reflected with the notation: "[redacted]."

[2] The court notes that protestor's bid protest complaint refers to the above-captioned bid protest as a pre-award bid protest. Protestor's counsel reiterated that the above-captioned bid protest was filed as a pre-award bid protest at oral argument.

not issued as an SDVOSB set-aside. Protestor alleges its "direct economic interest has been affected by the failure to award the contract to an SVDOSB [sic]" under the '276 Solicitation. According to protestor, the '276 Solicitation's designation as a 100% small business set-aside instead of as a 100% SDVOSB set-aside was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Protestor requests this court to issue a declaratory judgment that the United States Department of Veterans Affairs' (VA) cancellation of the previous solicitation, Solicitation No. 36C26318Q0181 (the '181 Solicitation), for the services, which was issued as an SDVOSB, was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law and regulation," and order the '276 Solicitation to "be cancelled and resolicited as a 100% SVDOSB [sic] set-aside." Protestor also requests the court to order "the VA to pay VS [Veteran Shredding, LLC] damages in the amount of its bid preparation and proposal costs."

## FINDINGS OF FACT

Prior to the issuance of the '276 Solicitation, the VA issued the '181 Solicitation on February 12, 2018 for document destruction services at the Minneapolis VA Healthcare System as a 100% SDVOSB set-aside. See Veteran Shredding, LLC v. United States, 140 Fed. Cl. 759, 761 (2018). The Independent Government Cost Estimate (IGCE) for the '181 Solicitation was $[redacted] for the base and option years. See id. at 762-63. In response to the '181 Solicitation, five SDVOSBs, including protestor, submitted offers. See id. Chad L. Raterman, the contracting officer, requested revised quotes as all offers received greatly exceeded the IGCE, ranging from [redacted]% greater than the IGCE for the base and option years to protestor's quote which exceeded the IGCE by [redacted]%. After the offerors revised their quotes for the '181 Solicitation, all bids continued to exceed the IGCE, ranging from [redacted]% to [redacted]% over the IGCE for the base and option years.

| VENDOR NAME: | [redacted] | Veteran Shredding | [redacted] | [redacted] | [redacted] | IGCE |
|---|---|---|---|---|---|---|
| CLIN PRICING | | | | | | |
| 0001 (BASE YEAR) | $[redacted] | $[redacted] | $[redacted] | $[redacted] | $[redacted] | $[redacted] |
| 1001 (OY1) | $[redacted] | $[redacted] | $[redacted] | $[redacted] | $[redacted] | $[redacted] |
| 2001 (OY2) | $[redacted] | $[redacted] | $[redacted] | $[redacted] | $[redacted] | $[redacted] |
| 3001 (OY3) | $[redacted] | $[redacted] | $[redacted] | $[redacted] | $[redacted] | $[redacted] |
| 4001 (OY4) | $[redacted] | $[redacted] | $[redacted] | $[redacted] | $[redacted] | $[redacted] |
| TOTAL | $[redacted] | $[redacted] | $[redacted] | $[redacted] | $[redacted] | $[redacted] |
| | | | | | | |
| REVISED QUOTES | | | | | | |
| CLIN PRICING | | | | | | |
| 0001 (BASE YEAR) | $[redacted] | $[redacted] | $[redacted] | $[redacted] | $[redacted] | |
| 1001 (OY1) | $[redacted] | $[redacted] | $[redacted] | $[redacted] | $[redacted] | |
| 2001 (OY2) | $[redacted] | $[redacted] | $[redacted] | $[redacted] | $[redacted] | |
| 3001 (OY3) | $[redacted] | $[redacted] | $[redacted] | $[redacted] | $[redacted] | |
| 4001 (OY4) | $[redacted] | $[redacted] | $[redacted] | $[redacted] | $[redacted] | |
| TOTAL | $[redacted] | $[redacted] | $[redacted] | $[redacted] | $[redacted] | |

As reflected in the chart above, protestor's revised offer was [redacted]% above the IGCE for the base and option years. The Contracting Officer concluded that all the revised quotes received were too high and subsequently cancelled the '181 Solicitation on March 1, 2018. See id. at 763-64. Protestor filed a pre-award bid protest challenging the cancellation of the '181 Solicitation at the United States Government Accountability Office (GAO) and then at the United States Court of Federal Claims. The GAO dismissed protestor's pre-award bid protest of the '181 Solicitation as untimely and the Court of

Federal Claims dismissed protestor's bid protest of the '181 Solicitation for lack of standing. See Veteran Shredding, LLC v. United States, 140 Fed. Cl. at 763-65.[3]

Following the cancellation of the '181 Solicitation, the Contracting Officer conducted market research on March 6, 2018 to evaluate if veteran-owned small businesses (VOSB) were available and capable to provide document destruction services for the MVAHCS. The Contracting Officer stated:

> [T]here are four (4) VOSB vendors listed in VIP [Vendor Information Pages] utilizing NAICS [North American Industry Classification System] 561990 [representing the NAICS code for All Other Support Services] with keyword "shredding." In addition, GSA [General Services Administration] eLibrary under [S]IN [Special Item Number] 51 507, Destruction Services, provided only 1 VOSB listing. All vendors identified were contacted via phone calls to determine their capability.

After contacting the five VOSBs, the Contracting Officer found:

1. [redacted] stated they would only be able to provide shredding services if the VA would ship the material for them to destruct. It is therefore determined they do not have the capability to provide the service required.
2. [redacted] stated they do not have the capability to perform the service in the required location.
3. [redacted] could not be reached with numerous attempts to contact.
4. [redacted] stated they would be interested in the requirement but would have to subcontract as they are not located in the required location. They stated they do not believe there is an SDVOSB or VOSB vendor in the local area in which they could partner/subcontract with.
5. [redacted] stated they are not able to provide the services in the location of the requirement therefore could not perform these services.

Consequently, the contracting specialist, Shane Galles, concluded in a June 26, 2018 memorandum:

> [T]he VA Rule of Two cannot be met with respect to VOSB concerns. The Contracting Officer does not have a reasonable expectation that two or more capable and verified VOSB offerors will submit quotes and that award can be made at a fair and reasonable price offering best value to the United States.

Concurrent with the market research into VOSBs, the Contracting Officer searched for small businesses that could potentially fulfill the document destruction services contract for the MVAHCS. The Administrative Record includes a search of the GSA eLibrary filtered to small businesses with a Special Item Number (SIN) code of 51 507 for

---

[3] The GAO dismissed protestor's bid protest in an unpublished decision. In re: Veteran Shredding, LLC, B-416144 (Comp. Gen. June 4, 2018).

Destruction Services resulting in 38 vendors identified. The Administrative Record also includes the results of a search within the System for Award Management database limited to the Minneapolis, Minnesota region for vendors matching North American Industry Classification System (NAICS) code 561990 for All Other Support Services and Product Service Code R614 for Paper Shredding Services that generated 17 results.

To supplement the March 6, 2018 market research, the Contracting Officer issued a Sources Sought notice on June 6, 2018 asking for information from vendors interested in the MVAHCS document destruction services contract to submit information related to the vendor size and type, capabilities, and resources. In response to the Sources Sought notice, four vendors submitted information: [redacted], an SDVOSB, protestor Veteran Shredding, LLC, an SDVOSB, [redacted], a small business, and [redacted], a small business. From the responses, the Contracting Specialist concluded in a June 26, 2018 memorandum that "it is evident there are sufficient small businesses available to support competition for which the requirement should be solicited through GPE [government point-of-entry] as a SB [small business] set-aside."

In a January 7, 2019 memorandum, the Contracting Officer indicated that "additional market research was conducted to determine if there were changes in the market conditions since the time initial research was performed" following this court's dismissal of protestor's pre-award bid protest for the cancellation of the '181 Solicitation on November 26, 2018. See Veteran Shredding, LLC v. United States, 140 Fed. Cl. 759. The memorandum also stated "[t]he IGCE was re-evaluated and updated as a result" on January 7, 2019.[4] The updated IGCE stated a base year estimate of $[redacted] and a total estimate for the base and options years of $[redacted], representing an increase of $[redacted] from the IGCE used for the '181 Solicitation. The IGCE indicated that past contract pricing, the GSA Federal Supply Schedule Published Prices, and informal vendor quotes were utilized in forming the IGCE.[5]

The IGCE contained a breakdown of the base year figure of $[redacted]: $[redacted] per week per personal sized container for document destruction, $[redacted] per week per 32-gallon container, and $[redacted] per week per 96-gallon container. The IGCE stated that the MVAHCS possessed 622 containers of various sizes such that the aggregate cost based on containers per week and $[redacted] stop charges would amount to $[redacted] for the base year. The IGCE then assumed a [redacted]% increase in price per option year.

---

[4] The date listed on the IGCE is January 7, 2018. Defendant, however, notes in its motion for judgment on the administrative record that this is a typographical error and that the IGCE was prepared on January 7, 2019.

[5] The Contracting Officer's January 29, 2019 memorandum states that additional market research was done following the dismissal of Veteran Shredding, LLC v. United States, 140 Fed. Cl. 759, on November 26, 2018. There is no other indication of market research in the Administrative Record before the court between November 26, 2018 and January 7, 2019 beyond what is noted directly within the IGCE and the Contracting Officer's memoranda.

On January 8, 2019, Requisition 618-19-2-6133-0149 was submitted for the incumbent MVAHCS document destruction services incumbent vendor, Shred-N-Go, for an additional year of document destruction services for $[redacted].

In order to confirm "VOSB availability and to determine SB [small business] availability," the Contracting Officer published a Sources Sought notice on January 23, 2019 that requested the same information as the June 6, 2018 Sources Sought notice. The Sources Sought elicited three responses that are included in the Administrative Record:[redacted], a small business in the process of securing VOSB status, [redacted], which had previously responded to the June 6, 2018 notice and had submitted a bid in response to the '181 Solicitation, and [redacted], an SDVOSB. Protestor and the incumbent vendor Shred-N-Go, Inc. (Shred-N-Go), also responded with interest.[6] Consequently, in a January 29, 2019 memorandum, the Contracting Officer determined "based on previous market research as well as the market research performed in January 2019, the VA Rule of Two could not be met by VOSB concerns. In conclusion, the solicitation is set-aside for Small Business to assure sufficient competition."

On January 31, 2019, the Contracting Officer wrote an addendum to the January 29, 2019 memorandum summarizing the rationale for moving forward with the MVAHCS document destruction services solicitation as a small business set-aside following the dismissals of protestor's bid protests in regards to the '181 Solicitation:

It was determined all 5 quotes [received from SDVOSBs for the '181 Solicitation] exceeded available funding and all 5 quotes were determined to not be fair and reasonable based on historical pricing data and the IGCE. The solicitation was canceled which resulted in a protest to GAO and later to the Court of Federal Claims. . . .

Upon the conclusion of the protest, a new Fiscal Year had begun. Contracting requested a new Acquisition Plan and 2237 with FY19 funding be provided. It was also recommended by legal counsel to conduct additional market research in order to confirm market pricing and if there have been any changes in the market.

Because almost one year has passed since the initial solicitation was issued . . . market research was conducted to determine industry changes. . . .

Market Research Report Addendum 1 [on January 29, 2019] referenced additional market research that was conducted on 3/6/2018 and determined there were insufficient VOSB vendors that could provide the service.

---

[6] The Contracting Officer's January 29, 2019 memorandum and January 31, 2019 addendum indicate protestor and Shred-N-Go expressed interest. No record of their interest between the January 23, 2019 issuance of the Sources Sought notice and January 29, 2019 response date, however, was included within the Administrative Record. The Administrative Record does include correspondence between protestor and the Contracting Officer following the issuance of the '276 Solicitation.

A source's sought notice was published . . . on 1/23/2019 to confirm VOSB availability and to determine SB availability. The sources sought produced three (3) responses -- Two (2) responses from SDVOSBs, [redacted] and Veteran Shredding both who had previously quoted in response to RFQ 36C26318Q0181 and one (1) response from a Small Business, [redacted], who looks to be an extremely new start-up that may or may not have the capability or capacity to perform the requirement. In addition, Shred-N-Go Inc, the incumbent contractor and a small business, is still interested in the requirement.

Based on the results of results of the sources sought and prior market research, the solicitation will be set-aside as a small business set-aside.

The Contracting Officer issued the '276 Solicitation on March 1, 2019 for document destruction services at the MVAHCS. The '276 Solicitation was designated as a 100% small business set-aside and stated that the solicitation "INCORPORATES BY REFERENCE FAR [Federal Acquisition Regulation] 52.212-1, 52.212-4. FAR 52.212-3 AND 52.212-5 ARE ATTACHED." (capitalization in original). The factors to be evaluated for an award to be made under the '276 Solicitation included price, vendor capabilities, and safety policies. The '276 Solicitation stated:

Award will be made using the **Lowest Price Technically Acceptable (LPTA)** process, where the non-price factors are evaluated on an acceptable/unacceptable basis. <u>Award will be made to the Offeror of the technically acceptable quote with the lowest price.</u>

This solicitation is for a commercial item acquisition using Simplified Acquisition Procedures under the authority of FAR 13.5 Simplified Procedures for Certain Commercial Items.

(emphasis in original). The '276 Solicitation included a breakdown of the document destruction needs at the MVAHCS, totaling 622 consoles of documents which would need to be picked up and destroyed as well as the number of service calls each console required per year. On March 12, 2019, the Contracting Officer issued Amendment 0001 to the '276 Solicitation which contained the Contracting Officer's answers to questions received from interested vendors. In response to [redacted]'s question of "will federal government approved pricing be considered fair and reasonable, e.g. GSA Schedule approved pricing?" the Contracting Officer responded that "[p]rice will be evaluated in accordance with FAR 13.106-3."

The VA received four timely proposals in response to the '276 Solicitation. [redacted], a small business, submitted a proposal for the base and option years of $[redacted], incumbent small business vendor Shred-N-Go submitted a proposal for the base and options years of $[redacted], [redacted] submitted a proposal for the base and option years of $[redacted], and [redacted] submitted a proposal for the base and option years of $[redacted]. Protestor did not submit a proposal for the '276 Solicitation.

| VENDOR NAME: | [redacted | [redacted] | [redacted | [redacted] | VETERAN SHREDDING | IGCE |
|---|---|---|---|---|---|---|
| SIZE STATUS | SB | SB | VOSB | SDVOSB | SDVOSB | |
| DUNS | [redacted] | [redacted] | [redacted] | [redacted] | | |
| CLIN PRICING | | | | | | |
| 0001 (BASE YEAR) | $[redacted] | $[redacted] | $[redacted] | $[redacted] | | $[redacted] |
| 1001 (OY1) | $[redacted] | $[redacted] | $[redacted] | $[redacted] | | $[redacted] |
| 2001 (OY2) | $[redacted] | $[redacted] | $[redacted] | $[redacted] | | $[redacted] |
| 3001 (OY3) | $[redacted] | $[redacted] | $[redacted] | $[redacted] | | $[redacted] |
| 4001 (OY4) | $[redacted] | $[redacted] | $[redacted] | $[redacted] | | $[redacted] |
| TOTAL | $[redacted] | $[redacted] | $[redacted] | $[redacted] | $0.00 | $[redacted] |
| | | | | | NO QUOTE SUBMITTED BY PROTESTOR | |

During oral argument, the government indicated that the offers only received a price review and that no technical evaluation of the offers had yet occurred as of September 25, 2019.

On March 17, 2019, protestor filed a pre-award bid protest with the GAO challenging the '276 Solicitation's designation as a 100% small business set-aside. In the VA's response to the bid protest, the Contracting Officer submitted a memorandum to the GAO dated April 16, 2019 detailing the process and analysis leading to the 100% small business set-aside decision. In the memorandum, the Contracting Officer offered explanations of the decisions made in reference to the '276 Solicitation. In the April 16, 2019 memorandum, the Contracting Officer stated:

> [B]ecause all offered pricing exceeded available funding for the base period of the contract and none of the quotations received were fair and reasonable because the quotes still significantly exceeded the IGCE. I determined that RFQ 36C26318Q0181 should be cancelled and I would resolicit for the requirement with a revised set-aside.

In addition to reiterating the information stated in the January 29, 2019 memorandum and the January 31, 2019 addendum, the April 16, 2019 memorandum also offered additional context for proceeding with the '276 Solicitation as a 100% small business set-aside. In reference to the two SDVOSBs, [redacted] and protestor, who had responded to the June 6, 2018 Sources Sought notice, the Contracting Officer stated:

> 17. [redacted] and Veteran Shredding had previously submitted quotes in response to [the '181 Solicitation]. Their quotes exceeded available funding and significantly exceeded the IGCE. Based on these previous quotes submitted by [redacted] and Veteran Shredding, I determined that I did not have a reasonable expectation that [redacted] and Veteran Shredding would submit fair and reasonable pricing that fell within the funding allocated for the re-solicitation of the document destruction services requirement for MVAHCS.

> 18. I reviewed the capability statements submitted by [redacted] and [redacted], and I determined that both vendors were capable of providing the services. In addition, the small business incumbent, [redacted], stated that it was interested in the requirement and would be submitting a quote in response to the solicitation.

19. Based on this information, I determined that at least two small business concerns would submit offers in response to the solicitation.

Furthermore, in the April 16, 2019 memorandum, the Contracting Officer stated that the contract could be awarded "to a small business concern at fair market prices" because

> small business concerns currently hold the document destruction services contracts for other facilities in NCO [Network Contracting Office] 23. These contracts were all competitively awarded. Those facilities and contractors are: Sioux Falls VAMC (Nexcut LLC), Iowa City VAHCS (Nexcut LLC), Fargo VAHCS (Coast2Coast Shredding), St. Cloud VAHCS (Shred N Go) and MVAHCS (Shred N Go). Lastly, [redacted], the current contractor for MVAHCS, was successfully awarded two of the contracts by NCO 23.

(capitalization in original). In the April 16, 2019 memorandum, the Contracting Officer also stated that even with an increased IGCE, "the five quotes previously received from SDVOSBs [for the '181 Solicitation] still exceeded available funding for the base period and still vastly exceeded the IGCE." The Contracting Officer elaborated on why the '276 Solicitation was not an SDVOSB set-aside following the responses by [redacted] and [redacted] to the January 23, 2019 Sources Sought notice:

> [redacted] had previously submitted a quote in response to RFQ 36C26318Q0181. Its quote exceeded available funding and significantly exceeded the IGCE. Based on this previous quote submitted by [redacted], I determined that I did not have a reasonable expectation that [redacted] would submit fair and reasonable pricing that fell within the funding allocated for the resolicitation of the document destruction services requirement for MVAHCS.

In the April 16, 2019 memorandum, the Contracting Officer also indicated that [redacted] had submitted a quote in response to an October 2018 solicitation for document destruction services at the St. Cloud VA Healthcare System that exceeded the base year funding available by 246%. Furthermore, [redacted]'s quote exceeded a July 2017 solicitation for document destruction at the Black Hills VA Healthcare System's base funding available by 65%, and [redacted]'s quote exceeded the awardee of the Fargo VA Healthcare System document destruction services solicitation by 150%. The Contracting Officer indicated:

> The document destruction services requirement for MVAHCS is larger in size and scope than the requirements for St. Cloud VA HCS [Healthcare System], VA Black Hills HCS and Fargo VA HCS. However, the actual document destruction services are the same and the applicable VA policy and procedures pertaining to document destruction services are the same. In addition, the MVAHCS and St. Cloud VA HCS are very close in proximity. The city centers of Minneapolis and St. Cloud are located approximately 65 miles apart, and the HCSs are located approximately 80 miles apart. MVAHCS and St. Cloud VA HCS, due to this proximity, draw from the same group of vendors in both marketplaces to meet their requirements.

As a result, the Contracting Officer stated:

> Based on my personal knowledge of and experience with [redacted] and its pricing practices, I did not have a reasonable expectation that [redacted] would submit fair and reasonable pricing that fell within the funding available.

The Contracting Officer did not consider [redacted] as an eligible VOSB at the time since

> it was unclear whether it had the capability or capacity to perform the requirement because it was a new start-up with no experience. [redacted] was a small business concern when it submitted its response to the [January 23, 2019] sources sought notice on January 25, 2019. It indicated in its response that it had begun the process of applying for VIP VOSB certification but had not yet received verification. I did not know that [redacted] had become a verified VOSB until after I issued [the '276 Solicitation] when [redacted] submitted its quote.

The Contracting Officer reiterated in the April 16, 2019 memorandum concerning the '276 Solicitation that since he had received responses from small business concerns and the incumbent Shred-N-Go, he decided that "at least two capable small business concerns would submit offers in response to the solicitation" and he had the "expectation that award could be made to a small business concern at a fair market price." The Contracting Officer noted that the June 26, 2018 memorandum, January 29, 2019 memorandum, and January 31, 2019 addendum may contain some inaccuracies and stated the April 16, 2019 memorandum should be considered the full and accurate statement of the facts:

> My Market Research Addendums and Memorandum for Record do include a few factual inaccuracies. In part, this is due to typographical errors, and in part due to me confusing in my documentation the market research results of the MVAHCS requirement with that of the St. Cloud VAHCS. I was conducting market research for both acquisitions at the same time and inadvertently transposed information. The information contained in this CO Statement of Facts accurately reflects my knowledge and my determinations at the time they were made.

(capitalization in original).

The GAO denied protestor's bid protest on the '276 Solicitation in an unpublished decision on June 4, 2019. See In re: Veteran Shredding, LLC, B-417399 (Comp. Gen. June 4, 2019). Protestor filed its bid protest on the '276 Solicitation in this court on June 28, 2019. Protestor's complaint alleges the following two counts:

> COUNT I: The officer's evaluation of proposals and determination in the parent solicitation 36C26318Q0181 that the SDVOSB's prices were not fair and reasonable were not consistent with the FAR [Federal Acquisition Regulation] or the mandate under 38 U.S.C. § 8127(d), and therefore lacked a rational basis; were arbitrary and capricious; and/or involved a violation of regulation or procedure. . . .

COUNT II: The VA's cancellation of the parent solicitation 36C26318Q0181, and subsequent re-solicitation of the requirement under 36C26319Q0276 as a total small business set-aside, violates the FAR and the mandate under 38 U.S.C. § 8127(d), and therefore lacked a rational basis; was arbitrary and capricious; and/or involved a violation of regulation or procedure

(capitalization in original). In the complaint, protestor states multiple requests for relief:[7]

WHEREFORE, VS [Veteran Shredding, LLC] respectfully requests that this Court:

A. Issue a declaratory judgment that the VA's actions making the procurement analysis, decisions, and subsequent conclusions were arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law and regulation;

B. Issue a declaratory judgement that PL 109-461, as codified in 38 U.S.C. § 8127(d), the FAR, and the Supreme Court's decision in Kingdomware [Techs. Inc. v. United States, 136 S. Ct. 1969 (2016)], limits the officer's analysis in determining that an SDVOSB's offered price is or is not a "fair and reasonable price that offers best value to the United States" to a comparison of prices submitted by other SDVOSBs for the solicitation.

C. Issue a declaratory judgement that PL 109-461, as codified in 38 U.S.C. § 8127(d), the FAR, and the Supreme Court's decision in Kingdomware, prohibits the officer from canceling a 100% SVDOSB [sic] set-aside solicitation after bid or proposal submissions by SVDOSBs [sic]. See 38 U.S.C. § 8127(d); Kingdomware Techs., Inc., 136 S. Ct. at 1977 (". . . the Department shall (or must) prefer veteran-owned small businesses when the Rule of Two is satisfied.")

D. Issue a declaratory judgment that the VA's cancellation of the parent solicitation 36C26318Q0181 was in violation of applicable procurement laws and regulations;

E. Issue a declaratory judgment that the VA's cancellation of the parent solicitation 36C26318Q0181 was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law and regulation;

F. Issue a declaratory judgment that the VA's re-solicitation of the requirement in solicitation 36C26318Q0181 as solicitation

---

[7] Protestor's counsel was also counsel for multiple VA document destruction services cases filed in this court. Although not verbatim, the counts alleged and relief sought in the complaint in the above-captioned bid protest are substantially similar to those filed by protestor's counsel in Land Shark Shredding, LLC v United States, 145 Fed. Cl. 530; Land Shark Shredding, LLC v. United States, 142 Fed. Cl. 301 (2019); and Veteran Shredding, LLC v. United States, 140 Fed. Cl. 759.

36C26319Q0276 under a 100% total small business set-aside was in violation of applicable procurement laws and regulations;

G. Issue a declaratory judgment that the VA's re-solicitation of the requirement in solicitation 36C26318Q0181 as solicitation 36C26319Q0276 under a 100% total small business set-aside was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law and regulation;

H. Order that solicitation 36C26319Q0276 be cancelled and resolicited as a 100% SVDOSB [sic] set-aside;

I. Order the VA to pay VS damages in the amount of its bid preparation and proposal costs; and

J. Any other monetary and injunctive relief the Court determines is appropriate.

(capitalization in original).

# D I S C U S S I O N

The parties submitted cross-motions for judgment on the Administrative Record. Protestor argues that it has standing for its pre-award bid protest "as an SVDOSB [sic] who originally bid upon the parent solicitation,[8] 36C26318Q0181, and, due to that solicitation being canceled and rebid under 36C26319Q0276 as a 100% set-aside for small business, [p]laintiff's direct economic interest has been affected by the failure to award the contract to an SVDOSB [sic] . . . ." Protestor cites to <u>Weeks Marine, Inc. v. United States</u> in which the Federal Circuit held that a protestor in a pre-award bid protest can have standing when they suffer a "non-trivial competitive injury which can be redressed by judicial relief." <u>Weeks Marine, Inc. v. United States</u>, 575 F.3d 1352, 1361 (quoting <u>WinStar Comms., Inc. v. United States</u>, 41 Fed. Cl. 748, 763 (1998)). Protestor argues it has suffered such a non-trivial competitive injury when

[h]ere, VS [protestor] did not submit a bid for the ['276 Solicitation, because it believed that the set-aside should be one for SDVOSB concerns, VS knew it failed to stand a chance in the procurement process against larger economies of scale, because of the acquisition's small business set aside. . . . The VA's decision to list the ['276 Solicitation as a small business set-aside prevented VS from competing for the contract.

Defendant, however, argues that protestor does not have standing as the standard for the determination of a cognizable injury is a "substantial chance of winning the contract" and protestor's challenge to an agency's evaluation of bids is necessarily post-bid. Defendant argues that

because Veteran Shredding did not submit a quote for the '276 Solicitation it would lack standing to challenge the agency's evaluation of bids or cost

---

[8] In its filings, protestor sometimes denotes the '181 Solicitation the "parent solicitation" of the '276 Solicitation.

estimates that the agency used as part of that evaluation. Given that any challenge to the evaluation would be a "post-bid" protest, "Veteran Shredding [would have to] demonstrate 'a substantial chance of winning the contract' even though it is protesting pre-award."

(internal citations omitted) (alteration in original). Defendant's argument relies on protestor's lack of submission of an offer in response to the '276 Solicitation, which, according to defendant, preclude protestor from having a substantial chance of winning the '276 Solicitation contract. Defendant also argues protestor lacks standing for a lack of ripeness.

[B]ecause the VA has not yet evaluated the quotes it received from offerors [for the '276 Solicitation], a challenge to the agency's determination of whether the received quotes are reasonable is not yet ripe. . . . Here, there is no allegation that the VA has already used the updated IGCE to evaluate the quotes it received or that it analyzed the reasonableness of quotes received in response to the '276 Solicitation. Thus, a challenge to the IGCE or the agency's price analysis is unripe.

(internal citations omitted).

It is well established that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428 (2011); see also Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing Arbaugh v. Y & H Corp., 546 U.S. at 514)); Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990))); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." Arbaugh v. Y & H Corp., 546 U.S. at 506; see also Hymas v. United States, 810 F.3d 1312, 1317 (Fed. Cir. 2016) (explaining that a federal court must satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case); Cent. Pines Land Co., L.L.C. v. United States, 697 F.3d 1360, 1364 n.1 (Fed. Cir. 2012) ("An objection to a court's subject matter jurisdiction can be raised by any party or the court at any stage of litigation, including after trial and the entry of judgment." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506)); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1346 (Fed. Cir. 2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506; Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); and Fanning, Phillips

& Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998))); Pikulin v. United States, 97 Fed. Cl. 71, 76, appeal dismissed, 425 F. App'x 902 (Fed. Cir. 2011). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise *sua sponte*, even where . . . neither party has raised this issue." Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1369 (Fed. Cir.) (citing Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1485 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir.), cert. denied, 525 U.S. 826 (1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. granted in part sub. nom Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc., 546 U.S. 975 (2005), cert. dismissed as improvidently granted, 548 U.S. 124 (2006).

This court has jurisdiction to hear bid protests pursuant to 28 U.S.C. § 1491(b)(1) (2012) of the Tucker Act, which provides that this court has

> jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1); see also Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1359 (Fed. Cir. 2009). The Administrative Dispute Resolution Act of 1996, codified at 28 U.S.C. § 1491(b)(1)–(4), amended the Tucker Act to establish a statutory basis for bid protests in the United States Court of Federal Claims. See Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1330–32 (Fed. Cir. 2001).

In order to have standing to sue as an "interested party" under this provision, a disappointed bidder must show that it suffered competitive injury or was "prejudiced" by the alleged error in the procurement process. See Todd Constr., L.P. v. United States, 656 F.3d 1306, 1315 (Fed. Cir. 2011) (To prevail, a bid protester must first "'show that it was prejudiced by a significant error' (i.e., 'that but for the error, it would have had a substantial chance of securing the contract).'" (quoting Labatt Food Serv., Inc. v. United States, 577 F.3d 1375, 1378, 1380 (Fed. Cir. 2009)); Blue & Gold Fleet, L.P. v. United States, 492 F.3d at 1317; see also Sci. Applications Int'l Corp. v. United States, 108 Fed. Cl. 235, 281 (2012); Linc Gov't Servs., LLC v. United States, 96 Fed. Cl. 672, 693 (2010) ("In order to establish standing to sue, the plaintiff in a bid protest has always needed to demonstrate that it suffered competitive injury, or 'prejudice,' as a result of the allegedly unlawful agency decisions." (citing Rex Serv. Corp. v. United States, 448 F.3d at 1308; Statistica, Inc. v. Christopher, 102 F.3d 1577, 1580–81 (Fed. Cir. 1996); Vulcan Eng'g Co. v. United States, 16 Cl. Ct. 84, 88 (1988); Morgan Bus. Assocs., Inc. v. United States, 223 Ct. Cl. 325, 332 (1980))). In order to establish what one Judge on this court has called "allegational prejudice" for the purposes of standing, the bidder must show that there was a "substantial chance" it would have received the contract award, but for the alleged procurement error. See Linc Gov't Servs., LLC v. United States, 96 Fed. Cl. at 675; Hyperion, Inc. v. United States, 115 Fed. Cl. 541, 550 (2014) ("The government acknowledges that proving prejudice for purposes of standing merely requires "allegational prejudice," as contrasted to prejudice on the merits . . . ."); Bannum, Inc. v. United States, 115 Fed. Cl. 148, 153 (2014); see also Bannum, Inc. v. United States, 404

F.3d 1346, 1358 (Fed. Cir. 2005); <u>Galen Med. Assocs., Inc. v. United States</u>, 369 F.3d 1324, 1331 (Fed. Cir.), <u>reh'g</u> <u>denied</u> (Fed. Cir. 2004); <u>Info. Tech. & Applications Corp. v. United States</u>, 316 F.3d 1312, 1319 (Fed. Cir.), <u>reh'g</u> <u>and</u> <u>reh'g</u> <u>en</u> <u>banc</u> <u>denied</u> (Fed. Cir. 2003); <u>Statistica, Inc. v. Christopher</u>, 102 F.3d at 1581; <u>Archura LLC v. United States</u>, 112 Fed. Cl. 487, 497 (2013); <u>Lab. Corp. of Am. v. United States</u>, 108 Fed. Cl. 549, 557 (2012). Because standing is a jurisdictional issue, this showing of prejudice is a threshold issue. <u>See</u> <u>Corus Grp. PLC. v. Int'l Trade Comm'n</u>, 352 F.3d 1351, 1357 (Fed. Cir. 2003); <u>Myers Investigative & Sec. Servs., Inc. v. United States</u>, 275 F.3d 1366, 1370 (Fed. Cir. 2002).

In the context of a pre-award bid protest,[9] the United States Court of Appeals for the Federal Circuit has determined that to show the requisite "direct economic interest," and, therefore, to be an "interested party" under the Tucker Act, the protestor has to have suffered a "'non-trivial competitive injury which can be redressed by judicial relief.'" <u>See</u> <u>Orion Tech., Inc. v. United States</u>, 704 F.3d 1344, 1348 (Fed. Cir. 2013) (quoting <u>Weeks Marine, Inc. v. United States</u>, 575 F.3d at 1362–63); <u>see</u> <u>also</u> <u>CGI Fed. Inc. v. United States</u>, 779 F.3d 1346, 1348 (Fed. Cir. 2018); <u>COMINT Sys. Corp. v. United States</u>, 700 F.3d at 1383 n.7 ("[I]n <u>Weeks Marine</u> this court specifically held that the 'non-trivial competitive injury' standard was applicable to 'a <i>pre-award</i> protest.'" (quoting <u>Weeks Marine, Inc. v. United States</u>, 575 F.3d at 1362)) (emphasis in original); <u>MVS USA, Inc. v. United States</u>, 111 Fed. Cl. 639, 647 (2013); <u>Miles Constr., LLC v. United States</u>, 108 Fed. Cl. at 797. This is a lower standard than the "substantial chance" standard used in post-award bid protests, but still requires a "showing of <i>some</i> prejudice." <u>Orion Tech., Inc. v. United States</u>, 704 F.3d at 1348-49 (quoting <u>Weeks Marine, Inc. v. United States</u>, 575 F.3d at 1362) (emphasis in original).

As explained by the United States Court of Federal Claims in <u>Digitalis Education Solutions, Inc. v. United States</u>:

> Only an "interested party" has standing to challenge a contract award. <u>Rex Serv. Corp. v. United States</u>, 448 F.3d 1305, 1307 (Fed. Cir. 2006). An interested party is an actual or prospective bidder whose direct economic interest would be affected by the award of the contract. <u>Id.</u> Thus, a party must show that it is 1) an actual or prospective bidder and 2) that it has a direct economic interest. "[I]n order to be eligible to protest, one who has not actually submitted an offer must be expecting to submit an offer prior to the closing date of the solicitation." <u>MCI Telecomms. Corp. v. United States</u>, 878 F.2d 362, 365 (Fed. Cir. 1989). To prove a direct economic interest, a party must show that it had a "substantial chance" of winning the contract. <u>Rex Serv.</u>, 448 F.3d at 1308.

<u>Digitalis Educ. Solutions, Inc. v. United States</u>, 664 F.3d 1380, 1384 (Fed. Cir. 2012); <u>see</u> <u>also</u> <u>Am. Fed'n of Gov't Emps. v. United States</u>, 258 F.3d 1294, 1302 (Fed. Cir. 2001), <u>cert.</u> <u>denied</u>, 534 U.S. 113 (2002); <u>Centech Grp., Inc. v. United States</u>, 78 Fed. Cl. 496, 503-504 (2007).

---

[9] As noted above, protestor's bid protest complaint specifically refers its protest as a pre-award bid protest.

As indicated above, for protestor to have standing in this pre-award protest, plaintiff must "show that it is (1) an actual or prospective bidder, and (2) that it has a direct economic interest." CGI Fed. Inc. v. United States, 779 F.3d at 1348 (citing Digitalis Educ. Solutions, Inc. v. United States, 664 F.3d at 1384). Amendment 001 to the '276 Solicitation set a bid deadline of March 18, 2019. Protestor did not submit a bid in response to the '276 Solicitation. Protestor argues the '276 Solicitation's status issued as a 100% small business set-aside made it impossible for protestor to have a chance of success to receive an award. Protestor filed its bid protest challenging the terms of the '276 Solicitation at the GAO on March 17, 2019, the day before the bidding deadline to submit responses to the '276 Solicitation. The GAO subsequently dismissed protestor's bid protest on June 4, 2019. Protestor then filed a bid protest in this court on June 28, 2019.

Defendant argues that protestor does not have a substantial chance of winning the contract as protestor did not submit a bid and therefore cannot be a prospective bidder to have standing. Defendant cites Orion Technology, Inc. v. United States, 704 F.3d 1344 (Fed. Cir. 2013), Veteran Shredding, LLC v. United States, 140 Fed. Cl. 759, and Omran Holding Group v. United States, 128 Fed. Cl. 273 (2016) in which the substantial chance test was utilized in pre-award bid protests. These cases also are distinguishable from the above-captioned bid protest. Regarding Orion Technology, the court notes there are numerous differences between the protestor in Orion and protestor. As noted by the Federal Circuit in Orion:

> Orion is not challenging the terms of the solicitation, as was the case in Weeks Marine; it is challenging the Army's application of those solicitation criteria to Orion. The Army evaluated Orion's bid for compliance with the terms of the solicitation and then gave detailed reasons for rejecting Orion's proposal. In addition, Orion's bid was within the competitive range later established by the Army after Orion's exclusion but before the Army's initial response to Orion's first GAO protest. Given the circumstances, there is an adequate factual predicate to ascertain under the traditional "substantial chance" standard whether Orion was prejudiced by the Army's decision to exclude its initial proposal.

Orion Tech., Inc. v. United States, 704 F.3d at 1349. In addition, in Orion Technology, the Federal Circuit protestor was "not challenging the terms of the solicitation . . . it is challenging the Army's application of those solicitation criteria to Orion." Id. The VA did not evaluate a proposal from protestor because one was not submitted. Therefore, unlike in Orion, the VA could not protestor's bid for compliance with the terms of the solicitation or give detailed reasons for rejecting the proposal.

In Veteran Shredding and Omran Holding Group, the protestors had all submitted bids and were actual offerors who were found not to have a substantial chance of succeeding as their bids were too high and ranked too low, respectively. See Veteran Shredding, LLC v. United States, 140 Fed. Cl. at 764-65; Omran Holding Grp. v. United States, 128 Fed. Cl. at 284-85. In Veteran Shredding, the Judge of the United States Court of Federal Claims determined:

The VA received five offers for its lowest priced technically acceptable solicitation, three of which were technically-acceptable. Veteran Shredding was among the group which had technically acceptable proposals, but its price was the highest of that trio. And, the claims of error it makes in this protest focus primarily on VA's price reasonableness determination, which allegation of error would affect each of the three technically acceptable proposals equally. Had the VA found Veteran Shredding's offer fair and reasonable, it would have also found the two lower bids fair and reasonable. See, e.g., Universal Marine[ Co. K.S.C. v. United States], 120 Fed. Cl. [240,] 248-49 [2015] (finding no standing when the protest of the fourth highest bidder did not challenge the eligibility of two lower-priced offers). In sum, because Veteran Shredding offered the third highest technically acceptable bid, the court concludes that Veteran Shredding lacked a substantial chance at award. Therefore, Veteran Shredding cannot show a direct economic interest in the protest, and thus cannot be an interested party.

Veteran Shredding, LLC v. United States, 140 Fed. Cl. at 765. In Omran Holding Group, the Judge of the United States Court of Federal Claims first noted, "[i]t is uncontested that Omran was an actual offeror," Omran Holding Grp. v. United States, 128 Fed. Cl. at 284, the Judge then determined:

Assuming the agency had evaluated Omran's proposal, the best possible outcome would have been that it rated Omran acceptable on all three technical factors. If it found Omran to be technically acceptable, the agency would then have ranked Omran's proposal on its proposed price, along with the other technically acceptable responsive proposals. As none of Omran's allegations pertain either to the awardee's proposal, the solicitation, or the source selection process as a whole, Omran's success on any of its claims would not disturb the evaluations or ranking of the twenty-two responsive, technically-acceptable offerors. Thus, in a ranking on price, Omran would have ranked nineteenth out of twenty-three offerors.

Id. at 285 (internal citation omitted).

Unlike Orion Technology, Veteran Shredding, and Omran Holding Group, in the above-captioned bid protest, protestor did not submit a bid as it asserts it believed that if it submitted a bid it would not have had any chance of success competing in a 100% small business set-aside.

The current protest also differs from a recent decision by the undersigned in Land Shark Shredding, LLC v. United States, 145 Fed. Cl. 530 (2019). The Land Shark Shredding protestor, represented by the same counsel as in the above-captioned bid protest now brought by Veterans Shredding LLC, lodged a pre-award bid protest in the United States Court of Federal Claims, and because the Land Shark Shredding protestor had submitted a bid that was 163.59% above the available government funding, the undersigned concluded that the Land Shark Shredding protestor did not possess standing as it did not have a substantial chance of being awarded the contract having submitted a

quote which was substantially over the available funding.[10] The above-captioned bid protest is distinguishable from <u>Land Shark Shredding</u>. Unlike in <u>Land Shark Shredding</u>, the protestor in the above-captioned bid protest did not submit a bid in response to the '276 Solicitation, but is attempting to protest the type of set-aside in the solicitation. The protestor is challenging the terms of the '276 Solicitation being a 100% small business set-aside whereas the <u>Land Shark Shredding</u> protestor challenged the price analysis and evaluation of proposals.[11]

The above-captioned bid protest is most analogous to the case of <u>CGI Fed. Inc. v. United States</u>, 779 F.3d 1346 (Fed. Cir. 2015) in which a non-trivial competitive injury, in conjunction with a showing that the <u>CGI</u> protestor was a prospective bidder sufficed to establish standing. <u>See id.</u> at 1349-51. In <u>CGI</u>, the United States Department of Health and Human Service's Centers for Medicare and Medicaid Services issued requests for quotes in order to issue contracts that would use the awardees to determine if Medicare claims had been correctly paid. <u>See id.</u> at 1347. The Federal Circuit indicated if the contractor identified an overpayment, the agency would send a demand letter to the provider and repayment, and then pay the contractor a contingency fee. <u>See id.</u> In <u>CGI</u>, CGI protested the payment terms of the requests for quotes, contending that the terms violated certain statutory and regulatory provisions. <u>See id.</u> As noted by the Federal Circuit:

> Five different contractors bid on the 2014 RFQs, but CGI did not. Instead, before bidding closed, CGI filed a timely pre-award protest at the Government Accountability Office ("GAO") challenging the revised payment terms. While the GAO protest was pending, the bidding period closed. The GAO subsequently denied the protest. Three business days later, CGI filed a protest in the United States Court of Federal Claims.

<u>Id.</u> at 1348. The Federal Circuit recognized that "CGI never submitted a bid in response to the 2014 RFQs and thus is not an actual bidder. CGI must therefore show that it was a prospective bidder at the time it filed its protest in the Court of Federal Claims. We hold that it has made such a showing." <u>Id.</u> The Court of Federal Claims judge found that even absent a bid, the <u>CGI</u> protestor was a prospective bidder because "CGI was a qualified bidder, expected to bid, would have bid but for the unacceptable payment term and timely challenged this term prior to the close of bidding." <u>CGI Fed. Inc. v. United States</u>, 118 Fed. Cl. 337, 351 (2014), <u>rev'd</u>, 779 F.3d 1346 (Fed. Cir. 2015) (reversed and remanded

---

[10] The court notes that Veteran Shredding, LLC submitted a bid in response to the '181 Solicitation and revised the price downwards upon the request of the Contracting Officer. It is possible, therefore, that Veteran Shredding, LLC, theoretically, could have proposed an even lower bid for the '276 Solicitation, however, the court will not speculate on whether protestor would have submitted a competitive price quote in response to the '276 Solicitation.

[11] The court, however, notes that both the above captioned protest and <u>Land Shark Shredding, LLC v. United States</u>, 145 Fed. Cl. 530 did raise concerns over the Rule of Two analysis, or lack thereof, by the VA.

on the merits). In considering whether or not CGI was a prospective bidder, the Federal Circuit explained:

> CGI was a prospective bidder when it promptly initiated and diligently pressed its protest in the GAO forum, which Congress has encouraged protestors to use before suing in court. Unsuccessful in the GAO, it immediately filed for relief in court. We do not think that Congress meant for a protestor in CGI's position to lose its entitlement to sue just because delays engendered by the GAO adjudicatory process pushed completion past the closing date for bid submissions. Concluding, as we do, that CGI filed a protest prior to the close of bidding and thereby established its prospective bidder status, and that CGI thereafter diligently pursued its rights, CGI has prospective bidder status to pursue its Court of Federal Claims protest.

CGI Fed. Inc. v. United States, 779 F.3d at 1351.[12]

The CGI protestor did not need to prove a substantial chance of winning the contract to show a direct economic interest. Therefore, the Federal Circuit in CGI stated, a protestor can fulfill the requirement if it shows that it "suffered 'a non-trivial competitive injury which can be redressed by judicial relief.'" CGI Fed. Inc. v. United States, 779 F.3d at 1351 (quoting Weeks Marine, Inc. v. United States, 575 F.3d at 1361-62). As the Federal Circuit explained in Weeks Marine:

> We have not had occasion to discuss what is required to prove an economic interest, and thus prejudice, in a case such as this, where a prospective bidder/offeror is challenging a solicitation in the pre-award context. In such a case, it is difficult for a prospective bidder/offeror to make the showing of prejudice that we have required in post-award bid protest cases. The reason of course is that, in a case such as this, there have been neither bids/offers, nor a contract award. Hence, there is no factual foundation for a "but for" prejudice analysis. . . . Upon consideration of the matter, we conclude that the standard applied by the Court of Federal Claims [a non-trivial competitive injury which can be redressed by judicial relief] in this case strikes the appropriate balance between the language of § 1491(b)(1), which contemplates "an action by an interested party objecting to a solicitation for bids or proposals . . . or any alleged violation of statute or regulation in connection with . . . a proposed procurement," and Article III standing requirements. We therefore consider whether Weeks has

---

[12] The Federal Circuit in CGI reversed the trial court's determination that the that the modified payment terms did not violate any statutory or regulatory provisions, concluding "[b]ecause FAR Part 12 applies to the 2014 RFQs and the revised payment terms violate FAR Part 12's prohibition against including contract terms inconsistent with customary commercial practice, we reverse the Court of Federal Claims grant of judgment on the administrative record to the government." CGI Fed. Inc. v. United States, 779 F.3d at 1354 (emphasis in original).

demonstrated a "non-trivial competitive injury which can be addressed by judicial relief." We conclude that it has.

<u>Weeks Marine, Inc. v. United States</u>, 575 F.3d at 1361-62 (quoting 28 U.S.C. § 1491(b)(1)) (internal citations omitted). In <u>CGI Federal Inc.</u>, the Federal Circuit found that, in the pre-award bid protest context, the <u>CGI</u> protestor showed a non-trivial competitive injury when it was a qualified bidder who would have performed successfully but alleges "that the payment terms in the 2014 RFQs [we]re illegal and that they caused CGI to protest instead of bid." <u>CGI Fed. Inc. v. United States</u>, 779 F.3d at 1351.

Protestor's position in the above-captioned bid protest not unlike to the <u>CGI</u> protestor as Veteran Shredding, LLP did not submit a proposal in response to a solicitation. Protestor also filed a GAO protest prior to the close of bidding on the '276 Solicitation and filed a bid protest in this court 24 days after the GAO's dismissal of protestor's bid protest.[13] Protestor in the above-captioned protest is also similarly situated to the <u>CGI</u> protestor which "filed pre-award bid protests at the GAO, claiming that, contrary to FAR Part 12, the payment terms were inconsistent with customary commercial practice, unduly restrictive of competition, and violated the recovery audit program's enabling statute as well as prompt payment requirements." <u>CGI Fed. Inc. v. United States</u>, 118 Fed. Cl. at 346, <u>rev'd</u>, 779 F.3d 1346 (Fed. Cir. 2015). Protestor in the above-captioned bid protest is likewise seeking to challenge the validity and terms of the '276 Solicitation, which protestor argues effectively precluded it from submitting an offer, and not an evaluation of offers received, when arguing the '276 Solicitation violated the Rule of Two. In the above-captioned bid protest, protestor alleges an injury of being unable to compete for the '276 Solicitation because it argues that the '276 Solicitation was improperly designated as a small business set-aside. As a result, since the protestor here is seeking a change in the '276 Solicitation's set-aside terms, protestor has shown that it had a "'definite economic stake in the solicitation being carried out in accordance with applicable laws and regulations'" to possess a direct economic interest. <u>Id.</u> (quoting <u>Weeks Marine, Inc. v. United States</u>, 575 F.3d at 1362). Although it is close decision, the court determines that protestor has standing in the above caption protest, and, therefore, considers the parties' cross-motions for judgment on the Administrative Record on the merits.

Rule 52.1(c)(1) (2019) of the Rules of the United States Court of Federal Claims (RCFC) governs motions for judgment on the administrative record. The court's inquiry is directed to "'whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record.'" <u>Mgmt. & Training Corp. v. United States</u>, 115 Fed. Cl. 26, 40 (2014) (quoting <u>A & D Fire Prot., Inc. v. United States</u>, 72 Fed. Cl. 126, 131 (2006) (citing <u>Bannum, Inc. v. United States</u>, 404 F.3d 1346, 1356-57 (Fed. Cir. 2005))); <u>see</u> <u>also</u> <u>Centerra Grp., LLC v. United States</u>, 138 Fed. Cl. 407, 412 (2018) (citing <u>Bannum, Inc. v. United States</u>, 404 F.3d at 1356-57; <u>Informatics Applications Grp., Inc. v. United States</u>, 132 Fed. Cl. 519, 524 (2017) (citation omitted); <u>Strategic Bus. Sols.</u>,

---

[13] The undersigned in <u>Palantir</u> previously stated that, "[i]n the case of Palantir USG, and applying the specific facts and circumstances of Palantir USG's situation, the court concludes that the 43 days delay does not deprive Palantir USG of its status as a perspective bidder." <u>Palantir Techs. Inc. v. United States</u>, 128 Fed. Cl. 21, 34 (2016).

Inc. v. United States, 129 Fed. Cl. 621, 627 (2016), aff'd, 711 F. App'x 651 (Fed. Cir. 2018); Rotech Healthcare Inc. v. United States, 118 Fed. Cl. 408, 413 (2014); Eco Tour Adventures, Inc. v. United States, 114 Fed. Cl. 6, 21 (2013); DMS All-Star Joint Venture v. United States, 90 Fed. Cl. 653, 661 (2010). Pursuant to RCFC 52.1, in a bid protest, the court reviews the agency's procurement decision to determine whether it is supported by the administrative record. See CW Gov't Travel, Inc. v. United States, 110 Fed. Cl. 462, 481 (2013); see also CR/ZWS LLC v. United States, 138 Fed. Cl. 212, 223 (2018) (citing Bannum, Inc. v. United States, 404 F.3d at 1353-54).

The Administrative Dispute Resolution Act of 1996 (ADRA), Pub. L. No. 104-320, §§ 12(a), 12(b), 110 Stat. 3870, 3874 (1996) (codified at 28 U.S.C. § 1491(b)(1)–(4)), amended the Tucker Act to establish a statutory basis for bid protests in the United States Court of Federal Claims. See Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1330-32 (Fed. Cir. 2001); see also Sys. Application & Techs., Inc. v. United States, 691 F.3d 1374, 1380 (Fed. Cir. 2012) (explaining that the Tucker Act expressly waives sovereign immunity for claims against the United States in bid protests). The statute provides that protests of agency procurement decisions are to be reviewed under APA standards, making applicable the standards outlined in Scanwell Labs., Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970), and the line of cases following that decision. See, e.g., Per Aarsleff A/S v. United States, 829 F.3d 1303, 1309 (Fed. Cir. 2016) ("Protests of agency procurement decisions are reviewed under the standards set forth in the Administrative Procedure Act ('APA'), see 28 U.S.C. § 1491(b)(4) (citing 5 U.S.C. § 706), 'by which an agency's decision is to be set aside only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]'" (quoting NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004)) (citing PAI Corp. v. United States, 614 F.3d 1347, 1351 (Fed. Cir. 2010))); Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332; Res. Conservation Grp., LLC v. United States, 597 F.3d 1238, 1242 (Fed. Cir. 2010) ("Following passage of the APA in 1946, the District of Columbia Circuit in Scanwell Labs., Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970), held that challenges to awards of government contracts were reviewable in federal district courts pursuant to the judicial review provisions of the APA."); Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1329 (Fed. Cir.) (citing Scanwell Labs., Inc. v. Shaffer, 424 F.2d at 864, 868, for its "reasoning that suits challenging the award process are in the public interest and disappointed bidders are the parties with an incentive to enforce the law"), reh'g denied (Fed. Cir. 2004); Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1351 (Fed. Cir. 2004) ("Under the APA standard as applied in the Scanwell line of cases, and now in ADRA cases, 'a bid award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332)); Info. Tech. & Applications Corp. v. United States, 316 F.3d at 1319.

When discussing the appropriate standard of review for bid protest cases, the United States Court of Appeals for the Federal Circuit addressed subsections (2)(A) and (2)(D) of 5 U.S.C. § 706, see Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332 n.5, but focused its attention primarily on subsection (2)(A). See Croman Corp. v. United States, 724 F.3d 1357, 1363 (Fed. Cir.) ("'[T]he proper standard

to be applied [to the merits of] bid protest cases is provided by 5 U.S.C. § 706(2)(A) [(2006)]: a reviewing court shall set aside the agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."'" (alterations in original) (quoting <u>Banknote Corp. of Am. v. United States</u>, 365 F.3d at 1350-51 (citing <u>Advanced Data Concepts, Inc. v. United States</u>, 216 F.3d 1054, 1057-58 (Fed. Cir.), <u>reh'g denied</u> (Fed. Cir. 2000)))), <u>reh'g and reh'g en banc denied</u> (Fed. Cir. 2013). The statute says that agency procurement actions should be set aside when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D) (2018);[14] <u>see also Veterans Contracting Grp., Inc. v. United States</u>, 920 F.3d 801, 806 (Fed. Cir. 2019) ("In a bid protest, we follow Administrative Procedure Act § 706 and set aside agency action 'if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (quoting <u>Palladian Partners, Inc. v. United States</u>, 783 F.3d 1243, 1252 (Fed. Cir. 2015)); <u>Tinton Falls Lodging Realty, LLC v. United States</u>, 800 F.3d 1353, 1358 (Fed. Cir. 2015); <u>Orion Tech., Inc. v. United States</u>, 704 F.3d 1344, 1347 (Fed. Cir. 2013); <u>COMINT Sys. Corp. v. United States</u>, 700 F.3d 1377, 1381 (Fed. Cir. 2012) ("We evaluate agency actions according to the standards set forth in the Administrative Procedure Act; namely,

---

[14] The language of 5 U.S.C. § 706 provides in full:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—
   (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
   (B) contrary to constitutional right, power, privilege, or immunity;
   (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
   (D) without observance of procedure required by law;
   (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
   (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706.

for whether they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (quoting 5 U.S.C. § 706(2)(A); and <u>Bannum, Inc. v. United States</u>, 404 F.3d at 1351)); <u>Savantage Fin. Servs. Inc., v. United States</u>, 595 F.3d 1282, 1285-86 (Fed. Cir. 2010); <u>Weeks Marine, Inc. v. United States</u>, 575 F.3d 1352, 1358 (Fed. Cir. 2009); <u>Axiom Res. Mgmt., Inc. v. United States</u>, 564 F.3d at 1381 (noting arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A), and reaffirming the analysis of <u>Impresa Construzioni Geom. Domenico Garufi v. United States</u>, 238 F.3d at 1332); <u>Blue & Gold Fleet, L.P. v. United States</u>, 492 F.3d 1308, 1312 (Fed. Cir. 2007) ("'[T]he inquiry is whether the [government]'s procurement decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."'" (quoting <u>Bannum, Inc. v. United States</u>, 404 F.3d at 1351 (quoting 5 U.S.C. § 706(2)(A) (2000)))); <u>NVT Techs., Inc. v. United States</u>, 370 F.3d at 1159 ("Bid protest actions are subject to the standard of review established under section 706 of title 5 of the Administrative Procedure Act ('APA'), 28 U.S.C.        § 1491(b)(4) (2000), by which an agency's decision is to be set aside only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' 5 U.S.C. § 706(2)(A) (2000)." (internal citations omitted)); <u>Info. Tech. & Applications Corp. v. United States</u>, 316 F.3d at 1319 ("Consequently, our inquiry is whether the Air Force's procurement decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' 5 U.S.C. § 706(2)(A) (2000)."); <u>Synergy Sols., Inc. v. United States</u>, 133 Fed. Cl. 716, 734 (2017) (citing <u>Banknote Corp. of Am. v. United States</u>, 365 F.3d at 1350); <u>Eco Tour Adventures, Inc. v. United States</u>, 114 Fed. Cl. at 22; <u>Contracting, Consulting, Eng'g LLC v. United States</u>, 104 Fed. Cl. 334, 340 (2012). "In a bid protest case, the agency's award must be upheld unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" <u>Turner Constr. Co. v. United States</u>, 645 F.3d 1377, 1383 (Fed. Cir.) (quoting <u>PAI Corp. v. United States</u>, 614 F.3d at 1351), <u>reh'g en banc denied</u> (Fed. Cir. 2011); <u>see also Tinton Falls Lodging Realty, LLC v. United States</u>, 800 F.3d at 1358 ("In applying this [arbitrary and capricious] standard to bid protests, our task is to determine whether the procurement official's decision lacked a rational basis or the procurement procedure involved a violation of a regulation or procedure." (citing <u>Savantage Fin. Servs., Inc. v. United States</u>, 595 F.3d at 1285-86)); <u>Glenn Def. Marine (ASIA), PTE Ltd. v. United States</u>, 720 F.3d 901, 907 (Fed. Cir.), <u>reh'g en banc denied</u> (Fed. Cir. 2013); <u>McVey Co., Inc. v. United States</u>, 111 Fed. Cl. 387, 402 (2013) ("The first step is to demonstrate error, that is, to show that the agency acted in an arbitrary and capricious manner, without a rational basis or contrary to law."); <u>PlanetSpace, Inc. v. United States</u>, 92 Fed. Cl. 520, 531-32 ("Stated another way, a plaintiff must show that the agency's decision either lacked a rational basis or was contrary to law." (citing <u>Weeks Marine, Inc. v. United States</u>, 575 F.3d at 1358)), <u>subsequent determination</u>, 96 Fed. Cl. 119 (2010).

The United States Supreme Court has identified sample grounds which can constitute arbitrary or capricious agency action:

> [W]e will not vacate an agency's decision unless it "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency

expertise."

Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 658 (2007) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)); see also F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 552 (2009); Tinton Falls Lodging Realty, LLC v. United States, 800 F.3d at 1358; Ala. Aircraft Indus., Inc.-Birmingham v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009), reh'g and reh'g en banc denied (Fed. Cir. 2010); In re Sang Su Lee, 277 F.3d 1338, 1342 (Fed. Cir. 2002) ("[T]he agency tribunal must present a full and reasoned explanation of its decision. . . . The reviewing court is thus enabled to perform meaningful review . . . ."); Textron, Inc. v. United States, 74 Fed. Cl. 277, 285-86 (2006), appeal dismissed sub nom. Textron, Inc. v. Ocean Technical Servs., Inc., 223 F. App'x 974 (Fed. Cir. 2007). The United States Supreme Court also has cautioned, however, that "courts are not free to impose upon agencies specific procedural requirements that have no basis in the APA." Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 654 (1990).

Under an arbitrary or capricious standard, the reviewing court should not substitute its judgment for that of the agency, but should review the basis for the agency decision to determine if it was legally permissible, reasonable, and supported by the facts. See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. at 43 ("The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."); see also Dell Fed. Sys., L.P. v. United States, 906 F.3d 982, 990 (Fed. Cir. 2018); Turner Constr. Co., Inc. v. United States, 645 F.3d at 1383; R & W Flammann GmbH v. United States, 339 F.3d 1320, 1322 (Fed. Cir. 2003) (citing Ray v. Lehman, 55 F.3d 606, 608 (Fed. Cir.), cert. denied, 516 U.S. 916 (1995)); Synergy Sols., Inc. v. United States, 133 Fed. Cl. at 735 (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332-33). "'"If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations."'" Weeks Marine, Inc. v. United States, 575 F.3d at 1371 (quoting Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971))); Limco Airepair, Inc. v. United States, 130 Fed. Cl. 544, 550 (2017) (citation omitted); Jordan Pond Co., LLC v. United States, 115 Fed. Cl. 623, 631 (2014); Davis Boat Works, Inc. v. United States, 111 Fed. Cl. 342, 349 (2013); Norsat Int'l [America], Inc. v. United States, 111 Fed. Cl. 483, 493 (2013); HP Enter. Servs., LLC v. United States, 104 Fed. Cl. 230, 238 (2012); Vanguard Recovery Assistance v. United States, 101 Fed. Cl. 765, 780 (2011).

Stated otherwise by the United States Supreme Court:

Section 706(2)(A) requires a finding that the actual choice made was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971) (internal citations omitted), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977); see also U.S. Postal Serv. v. Gregory, 534 U.S. 1, 6-7 (2001); Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974), reh'g denied, 420 U.S. 956 (1975); Co-Steel Raritan, Inc. v. Int'l Trade Comm'n, 357 F.3d 1294, 1309 (Fed. Cir. 2004) (In discussing the "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with the law" standard, the Federal Circuit stated: "the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency."); In re Sang Su Lee, 277 F.3d at 1342; Advanced Data Concepts, Inc. v. United States, 216 F.3d at 1058 ("The arbitrary and capricious standard applicable here is highly deferential. This standard requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." (citing Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. at 285)); Lockheed Missiles & Space Co. v. Bentsen, 4 F.3d 955, 959 (Fed. Cir. 1993); By Light Prof'l IT Servs., Inc. v. United States, 131 Fed. Cl. 358, 366 (2017); BCPeabody Constr. Servs., Inc. v. United States, 112 Fed. Cl. 502, 508 (2013) ("The court 'is not empowered to substitute its judgment for that of the agency,' and it must uphold an agency's decision against a challenge if the 'contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'" (internal citations omitted) (quoting Keeton Corrs., Inc. v. United States, 59 Fed. Cl. 753, 755, recons. denied, 60 Fed. Cl. 251 (2004); and Axiom Res. Mgmt., Inc. v. United States, 564 F.3d at 1381)), appeal dismissed, 559 F. App'x 1033 (Fed. Cir. 2014); Supreme Foodservice GmbH v. United States, 109 Fed. Cl. at 382; Alamo Travel Grp., LP v. United States, 108 Fed. Cl. 224, 231 (2012); ManTech Telecomms. & Info. Sys. Corp. v. United States, 49 Fed. Cl. 57, 63 (2001), aff'd, 30 F. App'x 995 (Fed. Cir. 2002).

According to the United States Court of Appeals for the Federal Circuit:

Effective contracting demands broad discretion. Burroughs Corp. v. United States, 223 Ct. Cl. 53, 617 F.2d 590, 598 (1980); Sperry Flight Sys. Div. v. United States, 548 F.2d 915, 921, 212 Ct. Cl. 329 (1977); see NKF Eng'g, Inc. v. United States, 805 F.2d 372, 377 (Fed. Cir. 1986); Tidewater Management Servs., Inc. v. United States, 573 F.2d 65, 73, 216 Ct. Cl. 69 (1978); RADVA Corp. v. United States, 17 Cl. Ct. 812, 819 (1989), aff'd, 914 F.2d 271 (Fed. Cir. 1990). Accordingly, agencies "are entrusted with a good deal of discretion in determining which bid is the most advantageous to the Government." Tidewater Management Servs., 573 F.2d at 73, 216 Ct. Cl. 69.

Lockheed Missiles & Space Co. v. Bentsen, 4 F.3d at 958-59; see also Res-Care, Inc. v. United States, 735 F.3d 1384, 1390 (Fed. Cir.) ("DOL [Department of Labor], as a federal procurement entity, has 'broad discretion to determine what particular method of procurement will be in the best interests of the United States in a particular situation.'" (quoting Tyler Constr. Grp. v. United States, 570 F.3d 1329, 1334 (Fed. Cir. 2009))), reh'g en banc denied (Fed. Cir. 2014); Grumman Data Sys. Corp. v. Dalton, 88 F.3d 990, 995 (Fed. Cir. 1996); Geo-Med, LLC v. United States, 126 Fed. Cl. 440, 449 (2016); Cybertech Grp., Inc. v. United States, 48 Fed. Cl. 638, 646 (2001) ("The court recognizes that the agency possesses wide discretion in the application of procurement regulations.");

Furthermore, according to the United States Court of Appeals for the Federal Circuit:

> Contracting officers "are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process." Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (internal quotation marks omitted). Accordingly, procurement decisions are subject to a "highly deferential rational basis review." CHE Consulting, Inc. v. United States, 552 F.3d 1351, 1354 (Fed. Cir. 2008) (internal quotation marks omitted).

PAI Corp. v. United States, 614 F.3d at 1351; see also AgustaWestland N. Am., Inc. v. United States, 880 F.3d at 1332 ("Where, as here, a bid protester challenges the procurement official's decision as lacking a rational basis, we must determine whether 'the contracting agency provided a coherent and reasonable explanation of its exercise of discretion,' recognizing that 'contracting officers are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process.'" (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332-33 (internal quotation marks and citation omitted))); Weeks Marine, Inc. v. United States, 575 F.3d at 1368-69 ("We have stated that procurement decisions 'invoke [ ] "highly deferential" rational basis review.' Under that standard, we sustain an agency action 'evincing rational reasoning and consideration of relevant factors.'" (alteration in original) (quoting CHE Consulting, Inc. v. United States, 552 F.3d at 1354 (quoting Advanced Data Concepts, Inc. v. United States, 216 F.3d at 1058))).

A disappointed bidder has the burden of demonstrating the arbitrary and capricious nature of the agency decision by a preponderance of the evidence. See Tinton Fall Lodging Realty, LLC v. United Sates, 800 F.3d at 1364; see also Grumman Data Sys. Corp. v. Dalton, 88 F.3d at 995-96; Enhanced Veterans Sols., Inc. v. United States, 131 Fed. Cl. 565, 578 (2017); Davis Boat Works, Inc. v. United States, 111 Fed. Cl. at 349; Contracting, Consulting, Eng'g LLC v. United States, 104 Fed. Cl. at 340. The Federal Circuit has indicated that "[t]his court will not overturn a contracting officer's determination unless it is arbitrary, capricious, or otherwise contrary to law. To demonstrate that such a determination is arbitrary or capricious, a protester must identify 'hard facts'; a mere inference or suspicion . . . is not enough." PAI Corp. v. United States, 614 F.3d at 1352 (citing John C. Grimberg Co. v. United States, 185 F.3d 1297, 1300 (Fed. Cir. 1999)); see also Turner Constr. Co., Inc. v. United States, 645 F.3d at 1387; Sierra Nevada Corp. v. United States, 107 Fed. Cl. 735, 759 (2012); Filtration Dev. Co., LLC v. United States, 60 Fed. Cl. 371, 380 (2004).

> A bid protest proceeds in two steps. First . . . the trial court determines whether the government acted without rational basis or contrary to law when evaluating the bids and awarding the contract. Second . . . if the trial court finds that the government's conduct fails the APA review under 5 U.S.C. § 706(2)(A), then it proceeds to determine, as a factual matter, if the bid protester was prejudiced by that conduct.

Bannum, Inc. v. United States, 404 F.3d at 1351; T Square Logistics Servs. Corp. v. United States, 134 Fed. Cl. 550, 555 (2017); FirstLine Transp. Sec., Inc. v. United States, 119 Fed. Cl. 116, 126 (2014), appeal dismissed (Fed. Cir. 2015); Eco Tour Adventures,

Inc. v. United States, 114 Fed. Cl. at 22; Archura LLC v. United States, 112 Fed. Cl. at 496. To prevail in a bid protest case, the protestor not only must show that the government's actions were arbitrary, capricious, or otherwise not in accordance with the law, but the protestor also must show that it was prejudiced by the government's actions. See 5 U.S.C. § 706 ("[D]ue account shall be taken of the rule of prejudicial error."); see also Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d at 907 ("In a bid protest case, the inquiry is whether the agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and, if so, whether the error is prejudicial."); IT Enter. Sols. JV, LLC v. United States, 132 Fed. Cl. 158, 173 (2017) (citing Bannum v. United States, 404 F.3d at 1357-58); Linc Gov't Servs., LLC v. United States, 96 Fed. Cl. 672, 694-96 (2010). In describing the prejudice requirement, the Federal Circuit also has held that:

> To prevail in a bid protest, a protester must show a significant, prejudicial error in the procurement process. See Statistica, Inc. v. Christopher, 102 F.3d 1577, 1581 (Fed. Cir. 1996); Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996). "To establish prejudice, a protester is not required to show that but for the alleged error, the protester would have been awarded the contract." Data General, 78 F.3d at 1562 (citation omitted). Rather, the protester must show "that there was a substantial chance it would have received the contract award but for that error." Statistica, 102 F.3d at 1582; see CACI, Inc.-Fed. v. United States, 719 F.2d 1567, 1574-75 (Fed. Cir. 1983) (to establish competitive prejudice, protester must demonstrate that but for the alleged error, "'there was a substantial chance that [it] would receive an award--that it was within the zone of active consideration.'" (citation omitted)).

Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir.), reh'g denied (Fed. Cir. 1999); see also Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d at 912; Allied Tech. Grp., Inc. v. United States, 649 F.3d 1320, 1326 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2011); Info. Tech. & Applications Corp. v. United States, 316 F.3d at 1319; Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332-33; OMV Med., Inc. v. United States, 219 F.3d 1337, 1342 (Fed. Cir. 2000); Advanced Data Concepts, Inc. v. United States, 216 F.3d at 1057; Stratos Mobile Networks USA, LLC v. United States, 213 F.3d 1375, 1380 (Fed. Cir. 2000).

Protestor argues that the issuance of the '276 Solicitation as a 100% small business set-aside contravenes the Rule of Two as codified in 38 U.S.C. § 8127(d) (2012). Protestor argues that, as a result of the five SDVOSB bids received in response to the '181 Solicitation, the Contracting Officer's actions in issuing the '276 Solicitation not as an SDVOSB set-aside "w[ere] arbitrary, capricious, or otherwise contrary to law." Protestor argues:[15]

---

[15] Protestor's counsel made an identical argument as in the above-captioned bid protest regarding the Rule of Two in an earlier case he filed, Land Shark Shredding, LLC v. United States, Case No. 19-508C, also adjudicated by the undersigned. The quoted sections from protestor's motion for judgment on the administrative record in the above-captioned

PL 109-461 as codified in 38 U.S.C. § 8127(d), states unequivocally, "a contracting officer of the Department shall award contracts on the basis of competition restricted to small business concerns owned and controlled by veterans if the contracting officer has a reasonable expectation that": (1) two or more small business concerns owned and controlled by veterans will submit offers; and that (2) the award can be made at a fair and reasonable price that offers best value to the United States. 38 U.S.C. § 8127(d) (emphasis added). The Supreme Court interpreted the clause in this statute as a mandate [in Kingdomware Technologies, Inc. v. United States, 136 S. Ct. 1969 (2016)]. It ruled, "[w]hen a statute distinguishes between 'may' and 'shall,' it is generally clear that 'shall' imposes a mandatory duty. We see no reason to depart from the usual inference here."

A plain reading of the statute instructs that the contracting officer shall award if he or she has a reasonable expectation that the two above criteria will be satisfied. The VA, in this case and others, has interpreted that statute to mean that the VA shall compete procurements as SDVOSB and VOSB set-asides when those expectations are met, and only make awards if it receives an offer the CO [Contracting Officer] believes is "fair and reasonable." If, as in this case, the CO doesn't find that the prices are fair and reasonable based on any metric the CO can define, then, in the CO's estimation, Congress's mandate does not apply. The VA's approach reads language into the statute that is absent and flatly frustrates the plain meaning of the statute.

(emphasis in original) (internal citations omitted).

Protestor appears to argue that the correct interpretation of the United States Supreme Court's decision in Kingdomware and the legislative intent of 38 U.S.C. § 8127(d) require an award to an SDVOSB in the current bid protest before this court. Protestor argues:

The Rule of Two "requires only a reasonable expectation-not absolute certainty-that proposals will be submitted by at least two SDVOSB concerns, and that award can be made at a fair and reasonable price." The only rationale offered for the VA's determination is that previously submitted prices on the Parent Solicitation [the '181 Solicitation] and Source Sought responses by SDVOSB and VOSB concerns, exceeded the IGCE. Additionally, the CO further based his decision to cancel the Parent Solicitation, and make this Solicitation [the '276 Solicitation] a small business set-aside, because the CO desired to have bids that were similar to that of the incumbent's. The VA was clearly shopping for the best price

_____

bid protest are almost verbatim to protestor's motion for judgment on the administrative record in Land Shark Shredding Case No. 19-508C, in which the undersigned found the Rule of Two did not mandate award. See Land Shark Shredding, LLC v. United States, 145 Fed. Cl. 530. Moreover, protestor's counsel has made similar arguments in other cases filed in this court.

available to the agency, however, rather than finding the best price to the United States. The CO is required to see if an award can be made at a reasonable price, <u>when comparing the SDVOSB concerns' proposals with each other</u>, also known as adequate price competition.

(emphasis in original) (internal citations omitted).

Protestor claims that the actions of the Contracting Officer circumvented the Rule of Two when he made comparisons between the SDVOSB bids and the incumbent vendor's price for the '276 Solicitation. Protestor refers to FAR (Federal Acquisition Regulation) Section 13.106-3(a)(1), stating that price reasonableness should be based on "competitive quotations or offers." Protestor further refers to FAR Section 15.404-1 arguing that "adequate price competition establishes a fair and reasonable price." According to protestor, when multiple SDVOSB bids were received in response to the '181 Solicitation, the received quotes constituted adequate competition, and, therefore, fair and reasonable prices. Protestor argues that the evaluations and selection of bids received should be solely in the context of an SDVOSB set-aside without factoring in the incumbent contractor's pricing, a small business market, or the larger market in general.

When competition is intentionally restricted, then fairness and reasonableness turn not on values derived from the <u>open</u> competitive environment, but from the <u>restricted</u> competitive environment. This was Congress's intent, and the VA must not thwart it. Moreover, best value to the VA – or more accurately put, best value to the Minneapolis VA Healthcare System – is clearly not the same as the best value for our Nation. Again, as illustrated above, 38 U.S.C. § 8127(d) speaks to a higher objective of encouraging veteran entrepreneurship and keeping veterans gainfully employed (rather than homeless, addicted, and committing suicide at alarming rates). A VA contracting officer does not have the authority to undermine the United States Congress in determining what the United States values more: obtaining cheap shredding services or providing much-needed opportunity for veterans.

(emphasis in original).

Further, protestor argues that an SDVOSB must be selected to promote veteran-owned businesses when an SDVOSB set-aside receives multiple bids. In support, protestor cites to the legislative history of 38 U.S.C. § 8127:

Section 102 of H.R. 3949 would amend section 8127(c) of title 38, United States Code, by changing the word "may" to "shall," thereby giving VA contracting officers the authority to award contracts to SDVOSBs on an equal footing with small businesses operating under section 8(a) of the Small Business Act.

(citing H.R. Rep. No. 111-324, at 4). Protestor continues, asserting that SDVOSB set-asides create a restricted competition market for SDVOSBs and awards must be given to SDVOSBs:

In drafting 38 U.S.C. § 8127(d), Congress instructed a government agency to restrict competition to qualifying businesses when certain conditions are present, knowing full well that in many cases, more competition tends to occasion lower prices. That the government should bear somewhat higher short-term costs in achieving a nobler long-term objective should not be rejected – it should be lauded. Plainly, encouraging veteran enterprise and increasing veteran employment is the laudable intent of 38 U.S.C. § 8127(d).

Defendant argues that the Contracting Officer conducted an "initial Rule of Two assessment prior to issuing the '181 Solicitation" and "had a reasonable expectation that two or more SDVOSBs would submit offers such that an award could be made at a fair and reasonable price." When no SDVOSB made an offer at "a fair and reasonable price," combined with the Contracting Officer's market research, defendant argues the Contracting Officer "did not reasonably expect that two or more veteran-owned small businesses would submit quotes such that an award could be made at a fair and reasonable price that offers best value to the United States." Therefore, according to defendant, the '276 Solicitation was not required to be an SDVOSB set-aside. Defendant states:

> The Rule of Two analysis is conducted <u>prior to</u> the issuance of a solicitation, to determine whether competition should be restricted to veteran-owned small businesses based on a contracting officer's reasonable expectation. This is not the end of the inquiry, however. <u>After</u> a solicitation issues and quotes are received, the contracting officer reviews the actual quotes received to determine if they are reasonable. After all, a contracting officer's expectation about what quotes he will receive, even if reasonable, is just that – an <u>expectation</u>. It may not be borne out in practice.

(emphasis in original) (internal citations omitted). Defendant asserts that the Rule of Two only applies regarding the setting aside of a solicitation, "[a]fter the analysis is complete, and a solicitation is either set aside or left unrestricted, the Rule of Two ceases to be in play." Defendant continues:

> The fact that a contracting officer had the necessary reasonable expectation at the start of the procurement process, however, does not preclude her[16] from subsequently evaluating quotes received in response to the solicitation to determine whether the offered prices are reasonable. An expectation, even a reasonable one, may not materialize: the contracting officer may not receive <u>any</u> offers; or only one offer; or – contrary to her initial expectation – she may receive only offers that are excessive and unreasonable. The Rule of Two has no bearing on this part of the procurement process; it concerns only the initial decision to restrict competition for the solicitation.

---

[16] The court notes that the Contracting Officer at issue in the above captioned protest is Chad L. Raterman.

(emphasis in original) (internal citations omitted). Defendant asserts that the Contracting Officer cannot be precluded from evaluating quotes for price and technical evaluations after the receipt of offers:

> Veteran Shredding appears to believe that because the agency initially had a reasonable expectation that prices would be fair and reasonable, that is the end of the inquiry and the agency cannot go back and evaluate the quotes it received, even if those quotes are excessive or unreasonable. But that is not the law. The Rule of Two has no effect on an agency's price evaluation or decision to cancel a solicitation because the received quotes were too high.

> Veteran Shredding identifies no legal principle that precludes the VA from evaluating the quotes it received and, upon realizing that all were excessive, cancelling the solicitation.

(internal citations omitted). Defendant argues that the Contracting Officer did not circumvent regulations when determining fair and reasonable prices in the context of competition. In response to protestor's reliance on FAR Section 15.404-1, defendant argues:

> [T]hat reliance does not get [protestor] very far. First, that section does not apply to the solicitation at issue here because it falls under Part 15 of the FAR – Contracting by Negotiation – whereas the '276 Solicitation "is for a commercial item acquisition using Simplified Acquisition Procedures under the authority of FAR 13.5." Second, § 15.404-1 applies to analyzing proposals "to ensure that the <u>final</u>-agreed-to price is fair and reasonable"

(emphasis in original) (internal citation). Defendant contends that even if FAR Section 15.404-1 is applicable, the above facts show "there was nothing arbitrary or capricious about the agency's use of the Shred-N-Go contract as an initial basis for the cost estimate." Additionally, defendant references FAR Section 13.106-3(a), arguing that the regulation supports a contracting officer's discretion to review the quotes to "determine that the proposed price is fair and reasonable," which does not preclude a contracting officer "from subsequently evaluating quotes received in response to the solicitation."

In order to promote federal government contracting with service-disabled veteran-owned small businesses, Congress enacted the Veterans Benefits, Health Care, and Information Technology Act of 2006, §§ 502, 503, 120 Stat. 3431–3436 (codified, as amended, at 38 U.S.C. §§ 8127, 8128 (2012)) (the 2006 Act). In the 2006 Act, Congress included the "Rule of Two" doctrine, which provides that:

> Except as provided in subsections (b) and (c), for purposes of meeting the goals under subsection (a), and in accordance with this section, a contracting officer of the Department [of Veterans Affairs] shall award contracts on the basis of competition restricted to small business concerns owned and controlled by veterans if the contracting officer has a reasonable expectation that two or more small business concerns owned and controlled

by veterans will submit offers and that the award can be made at a fair and reasonable price that offers best value to the United States.

38 U.S.C. § 127(d). The Supreme Court announced in <u>Kingdomware</u>, a case cited by both parties in the above-captioned protest, that the VA's Rule of Two doctrine "is mandatory, not discretionary," and requires the

> Department [of Veterans Affairs] to apply the Rule of Two to all contracting determinations and to award contracts to veteran-owned small businesses. The Act does not allow the Department to evade the Rule of Two on the ground that it has already met its contracting goals or on the ground that the Department has placed an order through the [GSA] FSS [Federal Supply Schedule].

<u>Kingdomware Techs., Inc. v. United States</u>, 136 S. Ct. at 1976.

Neither the Rule of Two doctrine, nor the <u>Kingdomware</u> decision mandate awards to SDVOSBs without any consideration of price, nor do they prohibit the VA from employing competitive evaluation procedures, such as price analyses. The statute at 38 U.S.C. § 8127(d) states that the VA "shall award contracts on the basis of competition." <u>Id.</u> As the Federal Circuit recently explained in <u>PDS Consultants, Inc. v. United States</u>, 907 F.3d 1345, 1358 (Fed. Cir. 2018):

> [T]he statute applies to *all* contracts—not only *competitive* contracts. The statute requires that, when the Rule of Two is triggered—i.e., when 'the contracting officer has a reasonable expectation that two or more small business concerns owned and controlled by veterans will submit offers and that the award can be made at a fair and reasonable price that offers best value to the United States'—the VA must apply competitive mechanisms to determine to whom the contract should be awarded.

<u>Id.</u> (emphasis in original) (quoting 38 U.S.C. § 8127(d); and citing <u>Kingdomware Techs., Inc. v. United States</u>, 136 S. Ct. at 1976).

In addition, the VA's implementing regulation for the Rule of Two doctrine indicates that the contracting officer, even after setting aside a procurement opportunity for only SDVOSBs, will make an award only if the price received is "fair and reasonable" and that the contracting officer may cancel the solicitation if he or she receives no acceptable proposals. The "Department of Veterans Affairs Acquisition Regulation" (VAAR)[17] provides in relevant part:

---

[17] The "VA established the VAAR to codify and publish uniform policies and procedures for VA's acquisition of supplies and services, including construction," and the "VAAR implements and supplements the FAR [Federal Acquisition Regulations]." 48 C.F.R. § 801.101 (2019). The VAAR and the FAR apply to the above-captioned protest. <u>See</u> 48 C.F.R. § 801.104(a) (2019) ("Unless otherwise specified in this chapter or excepted by

(a) The contracting officer shall consider SDVOSB set-asides before considering VOSB set-asides. Except as authorized by 813.106, 819.7007 and 819.7008,[18] the contracting officer shall set-aside an acquisition for competition restricted to SDVOSB concerns upon a reasonable expectation that,

   (1) Offers will be received from two or more eligible SDVOSB concerns; and

   (2) Award will be made at a fair and reasonable price
                                                                                . . . .

(c) If the contracting officer receives only one acceptable offer at a fair and reasonable price from an eligible SDVOSB concern in response to a[n] SDVOSB set-aside, the contracting officer should make an award to that concern. If the contracting officer receives no acceptable offers from eligible SDVOSB concerns, the set-aside shall be withdrawn and the requirement, if still valid, set aside for VOSB competition, if appropriate.

48 C.F.R. § 819.7005 (2019).

The FAR sets out its own Rule of Two doctrine, almost identical to the one contained in the VAAR, which provides in relevant part:

(b) To set aside an acquisition for competition restricted to service-disabled veteran-owned small business concerns, the contracting officer must have a reasonable expectation that—

   (1) Offers will be received from two or more service-disabled veteran-owned small business concerns; and

   (2) Award will be made at a fair market price.

_____

statute (i.e., expenditures of the VA Canteen Service) or other VA regulations, the FAR and VAAR apply to all VA acquisitions (including construction) made with appropriated funds."); see id. at § 801.104(b) (2019) ("Use the VAAR and the FAR together. The FAR applies to VA acquisitions except as provided in the VAAR.").

[18] The exceptions referenced in 48 C.F.R. § 819.7005 for 48 C.F.R. § 819.7007 and 48 C.F.R. § 819.7008 are for sole source SDVOSB concerns and sole source VOSB concerns, respectively, See 48 C.F.R. §§ 819.7007, 819.7008 (2019). The exception referenced in 48 C.F.R. § 819.7005 for 48 C.F.R. § 813.106 reflects that "Contracting officers may use other than competitive procedures to enter into a contract with a[n] SDVOSB or VOSB when the amount exceeds the micro-purchase threshold up to $5 million." See 48 C.F.R. § 813.106(a) (2019).

(c) If the contracting officer receives only one acceptable offer from a service-disabled veteran-owned small business concern in response to a set-aside, the contracting officer should make an award to that concern. If the contracting officer receives no acceptable offers from service-disabled veteran-owned small business concerns, the service-disabled veteran-owned set-aside shall be withdrawn and the requirement, if still valid, set aside for small business concerns, as appropriate (see 19.203).

48 C.F.R. § 19.1405(b)-(c) (2019). Thus, pursuant to the VAAR and the FAR, even after a procurement process has been set aside pursuant to the Rule of Two, the contracting officer must still evaluate proposals to determine if the proposals received are "acceptable," and recognize that a contracting officer may potentially not make an award when no acceptable proposals are received. See 48 C.F.R. § 819.7005(b); 48 C.F.R. § 19.1405(c).

In Veterans Contracting Group, Inc. v. United States, 920 F.3d at 807, a case also brought by the same counsel representing the protestor in the above-captioned bid protest, the United States Court of Appeals for the Federal Circuit found that the VA rationally cancelled an SDVOSB set-aside contract due to unreasonable pricing contained with the proposals and was not required to make an award. See id. In Veterans Contracting Group a Judge of this court found that the decision by the Center for Verification and Evaluation (CVE), an office within the VA, to cancel the solicitation for the SDVOSB set-aside contract was not arbitrary and capricious because the contracting officer rationally concluded that there were no "responsive" bids with a "fair and reasonable" price. See Veterans Contracting Grp., Inc. v. United States, 135 Fed. Cl. 610, 616, 619-20 (2017), aff'd, 920 F.3d 801 (Fed. Cir. 2019)(internal quotation marks omitted).[19] The court noted that the contracting officer in Veterans Contracting Group rationally concluded that protestor's bid was not responsive, despite protestor's lower price, because the contracting officer

[l]ooked only to the fact that CVE had removed Veterans from the VIP database and could not have known that CVE had acted arbitrarily. He followed the normal procedures for handling the procurement. Because Veterans did not meet the requirements of a solicitation [that it be listed in the VIP database at the time it submitted its bid], it was ineligible to compete for the contract.

---

[19] The judge in Veterans Contracting Group also found that that the CVE's decision to remove protestor from the VetBiz VIP database was arbitrary and capricious and entered a permanent injunction to restore protestor to the database, making protestor once again eligible to compete for SDVOSB set-aside contracts. See Veterans Contracting Grp., Inc. v. United States, 135 Fed. Cl. at 619.

Id. at 619. The judge in Veterans Contracting Group explained that because the price of the "remaining responsive bids were sufficiently above the IGE [independent government estimate] that the officer had discretion to cancel and resubmit the solicitation." Id. This court, therefore, concluded that it would not "overturn" the VA's cancellation of the solicitation. See id. at 620.

The United States Court of Appeals for the Federal Circuit in Veterans Contracting Group affirmed the Court of Federal Claims' finding that the agency's cancellation of the SDVOSB set-aside contract was proper. See Veterans Contracting Grp., Inc. v. United States, 920 F.3d at 806-07. The Federal Circuit noted that the protestor had "not shown that the contracting officer lacked any rational basis for cancelling" the solicitation. See id. at 806. The Federal Circuit also explained that "[t]he only two acceptable bids" received by the VA "proposed costs significantly higher than the government's estimate for the project. Thus, the contracting officer rationally determined that these prices were unreasonable. Under the circumstances, he had a compelling reason to request cancellation." Id. at 807.

The solicitation at issue in the above captioned protest, the '276 Solicitation, was issued as a 100% small business set-aside after the Contracting Officer concluded that the Rule of Two could not be met by either VOSBs or SDVOSBs. Protestor argues that the '276 Solicitation should not have been issued as a 100% small business set-aside since the Contracting Officer had received five SDVOSB bids for the cancelled '181 Solicitation. Protestor's argument, however, that Kingdomware Technologies, Inc. v. United States automatically requires an award be made to an SDVOSB when multiple SDVOSBs submitted quotes in response to an SDVOSB set-aside is incorrect.

The issue in Kingdomware was whether the Rule of Two doctrine under 38 U.S.C. § 8127(d) mandates the VA to restrict competition to SDVOSBs when "it awards contracts or whether it must use the Rule of Two only to the extent necessary to meet annual minimum goals for contracting with veteran-owned small businesses." Kingdomware Tech., Inc. v. United States, 136 S. Ct. at 1973. As discussed above, in Kingdomware, the VA awarded a contract to a non-veteran-owned small business for an "Emergency Notification Service . . . . through the [GSA] FSS [Federal Supply Schedule] system." Id. at 1974 (footnote omitted). The Kingdomware protestor argued that the Rule of Two required that the VA "could not award the contracts . . . without first checking to see whether at least two veteran-owned small businesses could perform the work at a fair and reasonable price." Id. at 1975. The Supreme Court ruled in favor of the Kingdomware protestor concluding that "[Section] 8127 is mandatory, not discretionary." Id. at 1976. The Supreme Court explained:

> We hold that § 8127(d) unambiguously requires the Department to use the Rule of Two before contracting under the competitive procedures. Section 8127(d) requires that "a contracting officer of the Department shall award contracts" to veteran-owned small businesses using restricted competition whenever the Rule of Two is satisfied, "[e]xcept as provided in subsections (b) and (c)." (Emphasis added) . . . Except when the Department uses the noncompetitive and sole-source contracting procedures in subsections (b)

and (c), § 8127(d) requires the Department to use the Rule of Two before awarding a contract to another supplier. . . .

Accordingly, the Department <u>shall</u> (or <u>must</u>) prefer veteran-owned small businesses when the Rule of Two is satisfied. . . .

We therefore hold that, before contracting with a non-veteran owned business, the Department must first apply the Rule of Two.

<u>Kingdomware Techs., Inc. v. United States</u>, 136 S. Ct. at 1976-77 (emphasis in original) (internal citations omitted).

Protestor's argument that the Rule of Two requires that an automatic award be made to an SDVOSB when there are two more offers in an SDVOSB set-aside is not supported by <u>Kingdomware</u>. The <u>Kingdomware</u> case does not mandate such an award, because as noted above, <u>Kingdomware</u> only requires that the VA to "restrict[] competition" to SDVOSBs when the Rule of Two is satisfied. <u>See</u> <u>id.</u> at 1973-74. The <u>Kingdomware</u> decision does not go so far as to state that a contracting officer always must make an award to an SDVOSB if the Rule of Two is satisfied without regard to a contracting officer's determination of the fairness and reasonableness of the quotes received, and/or the outcome of the technical capability evaluations. Moreover, once the Contracting Officer makes the determination that the Rule of Two cannot be met, <u>Kingdomware</u> no longer controls the Contracting Officer's decision-making and the Contracting Officer possesses the discretion to conduct analyses to further evaluate any received proposals.

Both parties reference sections 13.106-3(a) and 15.404-1(a) of the Federal Acquisition Regulation (FAR). 48 C.F.R. § 13.106-3, in relevant part:

(a) Basis for award. Before making award, the contracting officer must determine that the proposed price is fair and reasonable.

(1) Whenever possible, base price reasonableness on competitive quotations or offers.

48 C.F.R. § 13.106-3(a). 48 C.F.R. § 15.404-1 states in part:

(a) General. The objective of proposal analysis is to ensure that the final agreed-to price is fair and reasonable.

(1) The contracting officer is responsible for evaluating the reasonableness of the offered prices. The analytical techniques and procedures described in this section may be used, singly or in combination with others, to ensure that the final price is fair and reasonable. The complexity and circumstances of each acquisition should determine the level of detail of the analysis required.

. . . .

(b) Price analysis for commercial and non-commercial items.

. . . .

> (2) The Government may use various price analysis techniques and procedures to ensure a fair and reasonable price. Examples of such techniques include, but are not limited to, the following:
>
>> (i) Comparison of proposed prices received in response to the solicitation. Normally, adequate price competition establishes a fair and reasonable price (see 15.403-1(c)(1)).

48 C.F.R. § 15.404-1(a)-(2)(i).

Protestor argues that the submission of the five SDVOSB bids in response to the '181 Solicitation constituted the price competition that determines a fair and reasonable price such that the Contracting Officer is required to make an award to an SDVOSB. Neither of these two cited regulations conflict with the Rule of Two as they serve as methods for a contracting officer to determine when a price is fair and reasonable. The two regulations do not speak to when a set-aside should be made or when a contracting officer must make an award. Furthermore, the '276 Solicitation was solicited under FAR Part 13, therefore FAR Section 15.404-1, on which protestor relies does not directly apply.[20]

Protestor is correct when asserting that the Rule of Two, when met, creates a restricted competition market. Protestor's argument, however, that a contracting officer must compare prices solely within an SDVOSB restricted market outside of the context of any other factors, and, then, is required to subsequently make an award is misplaced. The gravamen of protestor's argument is that if the Rule of Two is met and a VOSB or SDVOSB set-aside is made, if two or more VOSBs or SDVOSBs submit bids, the submitted bids constitute the competition in of themselves. Protestor continues, arguing that the Contracting Officer is limited to evaluating the VOSB or SDVOSB bids only in relation to one another without consideration of any factors outside the closed universe of a VOSB or SDVOSB set-aside which then, must be followed by an award of a contract to a VOSB or SDVOSB.

In the above-captioned bid protest, protestor contends that when five SDVOSB offers were received in response to the '181 Solicitation, the Rule of Two and Kingdomware require the Contracting Officer to evaluate the five bids against each other without consideration of the IGCE or the broader market. Kingdomware does not restrain the Contracting Officer in this manner regarding price and technical evaluations before making an award. Protestor's counsel made a similar argument that was rejected by a judge of this court in the Land Shark Shredding case, Case No. 18-1568C. See Land

---

[20] Even if this court were to accept protestor's argument on the applicability of FAR 15.404-1, the cited regulatory section concerns price comparisons and does not advance protestor's propositions that a fair and reasonable price is automatically established between the offers received or that a contracting officer must award a contract to an SDVOSB just because multiple SDVOSB offers are received in response to a solicitation.

Shark Shredding, LLC v. United States, 142 Fed. Cl. 301.[21] The Land Shark Shredding protestor in Case No. 18-1568C challenged the VA's decision to compare its price with non-SDVOSBs that bid on the same solicitation as follows:

> The VA also based its evaluation of LSS's [Land Shark Shredding's] bid on a comparison of LSS's prices to the other non-SDVOSB offerors. This is not a fair and reasonable comparison, and it totally negates the value of set-asides. It also ignores the U.S. Supreme Court's holdings in the Kingdomware case, which is discussed in detail below. Comparison of SDVOSB bids to non-veteran and other than small business concerns also violates Congress' express policy regarding SDVOSB assistance programs. "The purpose of the Service-Disabled Veteran-Owned Small Business Program is to provide Federal contracting assistance to service-disabled veteran-owned small business concerns." FAR § 19.1401(b).

Land Shark Shredding, LLC v. United States, 142 Fed. Cl. at 308. The Land Shark Shredding court rejected this argument and explained:

> Kingdomware does not address price comparisons, in general, or the specific question of how the VA should determine that a[n] SDVOSB's prices are fair and reasonable. The Federal Acquisition Regulation (FAR) provision cited by plaintiff is a policy statement that does not regulate procedures for the price evaluation of proposals in procurements such as this one. In sum, plaintiff objects to the price comparison conducted by the VA here because it does not do enough, in plaintiff's view, to secure government contracts for SDVOSBs. That is a policy argument, unmoored from statute or regulation. Without more, that policy argument is an insufficient ground for this court to invalidate a procurement decision of a federal agency.

Land Shark Shredding, LLC v. United States, 142 Fed. Cl. at 308

The above-captioned bid protest currently under review factually differs from Land Shark Shredding, LLC v. United States, 142 Fed. Cl. 301, as this protest does not involve a tiered list of set-asides in the solicitation in which awards are made to eligible SDVOSBs, VOSBs, small businesses, and then all businesses until awards are made. Additionally, protestor in the current bid protest does not base its argument on FAR Part 19. Protestor, however, makes a similar policy argument as the protestor in Land Shark Shredding when referring to legislative history in H.R. Rep. 111-324 and recurring citations to FAR Sections 13.106-3(a)(1) and 15.404-1, arguing that the Contracting Officer must be restricted to price comparisons and evaluations within the closed universe of an SDVOSB set-aside.

---

[21] The undersigned also rejected the same argument in Land Shark Shredding, LLC v. United States, 145 Fed. Cl. 530, in which protestor was represented by the same counsel as in the above cited Land Shark Shredding case and in the above-captioned bid protest currently under review.

Further, <u>Kingdomware</u> does not address how price and technical comparisons should be conducted within a set-aside, only that the Rule of Two must be evaluated prior to a VA procurement. The regulations within protestor's cited parts of the FAR do not expressly require the Contracting Officer to evaluate SDVOSB bids in a vacuum. Based on protestor's cited parts of the FAR, when the Contracting Officer is evaluating the fairness and reasonableness of quotes received, the Contracting Officer is allowed to utilize multiple factors in the evaluation. The Contracting Officer is not required to evaluate price fairness and reasonableness based solely on the submitted SDVOSB bids. It is unreasonable to require a Contracting Officer to evaluate and award a contract only based on submitted pricing within the set-aside. <u>See</u> <u>In re: Veteran Shredding, LLC</u>, B-417399, 2019 WL 2490468 (Comp. Gen. June 4, 2019) ("[I]t defies logic that an agency would be limited to utilizing pricing from a competition that was cancelled because all the prices were found to be unreasonably high as the yardstick for reasonableness. Rather, under such circumstances a contracting officer has the discretion to reasonably utilize other price analysis techniques such as consideration of an IGCE . . . ." (footnote omitted)).[22] The Rule of Two only applies to the determination of when a set-aside should be attempted and is not dispositive as to whether an SDVOSB set-aside mandates an award to one of the SDVOSB offerors which submits a bid. Therefore, protestor's argument that the Rule of Two restrains a contracting officer into selecting an SDVOSB bid from an SDVOSB set-aside without conducting a price analysis for reasonability that may extend beyond the SDVOSB and a technical evaluation is misplaced.

Protestor alleges that the Contracting Officer's analysis that two or more VOSBs and SDVOSBs would not submit fair and reasonable bids offering best value to the United States and, thereby, would not satisfy the Rule of Two was arbitrary and capricious. Protestor argues that the Contracting officer "improperly relied on the comparison of VS' [protestor's] proposal to Shred-N-Go's [incumbent's] contract with the VA at that time, and the AR [Administrative Record] contains no analysis regarding the reasonableness of Shred-N-Go's contract price as compared to the RFQ [the '276 Solicitation] that was requested."

Protestor further alleges "the IGCE was created using past contract pricing, but the IGCE does not specify if these past contract prices were from SDVOSB or VOSB concerns, which would constitute a material difference in terms of the acquisition." Protestor argues, without substantiation, that the Contracting Officer "failed to account for this material difference in the prospective bidders' differing market and economic factors" when utilizing the incumbent's contract as a basis for comparison. Consequently, protestor states that the Contracting Officer and the IGCE did not adhere to the FAR when addressing price competition between the SDVOSB bids by ignoring the "material difference" between the incumbent's price and the SDVOSB bids received in response to

---

[22] As noted above, the GAO denied protestor's bid protest concerning the terms of the '276 Solicitation in an unpublished opinion. <u>See</u> <u>In re: Veteran Shredding, LLC</u>, B-417399 (Comp. Gen. June 4, 2019). Although GAO decisions are not binding on the United States Court of Federal Claims, the court "may draw on GAO's opinions for its application of [its] expertise." <u>Allied Tech. Grp., Inc. v. United States</u>, 649 F.3d 1320, 1332 n.1 (Fed. Cir. 2011).

the '181 Solicitation. Citing to FAR Part 15, protestor asserts that the IGCE for the '276 Solicitation was deficient because:

> [T]he VA's IGCE simply states that the basis for the IGCE was made by an examination of past contract pricing, GSA Federal Supply Schedule Published Prices, and informal vendor quotes. The IGCE does not state if the past contract pricing was for SDVOSB or VOSB concerns, who historically bid at higher rates than small business concerns. Lastly, the IGCE did not specify any labor categories, such as SDVOSB or VOSB concerns, nor did the IGCE state that where a labor category was not distinguished . . . .

(internal citation omitted). Protestor argues that the IGCE was poorly documented, alleging that "[t]he Past Contract Pricing likely derives only from the incumbent. The Informal Vendor Quotes are not described. Only the Supply-Schedule prices can be ascertained with any degree of accuracy." Protestor offers samples of publicly available pricing on the GSA eLibrary and contends that the IGCE utilized for the '276 Solicitation does not take into account easily accessible pricing information and, severely underestimates the costs associated with the contract:

> The IGCE at AR 317 shows a price of $[redacted] per 96-gallon container for paper shredding services. However, a quick, two-minute glance at the 51-507 Destruction Services GSA Supply Schedule shows another vendor in the region [Confidential Records, Inc. in Menomonie, WI] at **$30.83** per 96- gallon unit and another [Shred-N-Go, Inc. in Minneapolis, MN] at **$30.23** per unit, both effective 2017. Whether the above-referenced prices are accurate or feasible is of no matter. What is important is the VA's improper yet steadfast reliance on an IGCE that: (1) lacks basic documentation and detail; and (2) does not reflect easily-ascertained price information. Accordingly, the record shows that the VA's price-reasonableness determination lacked rational basis or was otherwise arbitrary and capricious.

(emphasis in original) (footnotes and internal citation omitted). Further, protestor argues that the IGCE is inherently inaccurate as it seeks to compare SDVOSB concerns to the incumbent vendor who is not veteran-owned. Without documentation, protestor alleges that SDVOSBs historically bid at higher rates and have less efficient economies of scale. Consequently, protestor argues the Contracting Officer inappropriately

> determined that <u>all</u> of the SDVOSB and VOSB concerns' proposals were not fair and reasonable, even though they all were within the same range as each other . . . . [and] that the "award could [not] be made to an SDVOSB concern at a fair and reasonable price that offers the best value to the <u>Government</u>," rather than deciding if the SDVOSB concerns' proposed prices were fair and reasonable as compared amongst each other. The prior price of Shred-N-Go Inc., which the CO encouraged the SDVOSBs to emulate, was not a valid basis for comparison. The terms of the incumbent's contract were not for SDVOSBs, and the CO failed to account for this

material difference in the prospective bidders' differing market and economic factors.

(emphasis in original) (internal citations omitted).

Defendant responds that the IGCE and the contracting officer's comparison of submitted bids to the IGCE and incumbent price was appropriate. Defendant asserts that the market research conducted in March 2018 and January 2019 as well as the updated IGCE appropriately led to the '276 Solicitation being set aside for small businesses. Defendant argues the new IGCE was sufficiently documented to be a valid point of comparison as the GSA Federal Supply Schedule published prices, past contract pricing, and informal vendor quotes were factored into the IGCE value. Defendant disagrees with protestor's reliance on FAR Section 15.404-1, stating:

First, that section does not apply to the solicitation at issue here because it falls under Part 15 of the FAR – Contracting by Negotiation – whereas the '276 Solicitation "is for a commercial item acquisition using Simplified Acquisition Procedures under the authority of FAR 13.5." Second, § 15.404-1 applies to analyzing proposals "to ensure that the <u>final</u>-agreed-to price is fair and reasonable." It does not address Government cost estimates. Finally, Veteran Shredding does not explain <u>why</u> an IGCE "created from past contract pricing [that was not from] SDVOSB or VOSB concerns . . . would constitute a material difference in the terms of the acquisition," where the IGCE was based on a <u>small business</u> performing nearly identical services. Veteran Shredding does not identify any "differing market or economic factors" that would turn on whether a small business was veteran-owned or not. Thus, even assuming, for the sake of argument, that the VA was required to comply with FAR § 15.404-1 for this solicitation, there was nothing arbitrary or capricious about the agency's use of the Shred-N-Go contract as an initial basis for the cost estimate.

(alteration and emphasis in original) (internal citations omitted). Consequently, defendant argues that the IGCE and market research conducted was an appropriate basis for the Contracting Officer to rationally conclude that the Rule of Two could not be met by SDVOSBs with regards to the '276 Solicitation.

Protestor also argues that the Contracting Officer inappropriately evaluated submitted SDVOSB quotes to designate the '276 Solicitation as a 100% small business set-aside. Protestor argues that when five SDVOSB bids were received in response to the 181 Solicitation, "[t]he C[ontracting]O[fficer] is required to see if an award can be made at a reasonable price, <u>when comparing the SDVOSB concerns' proposals with each other</u>," relying on FAR Section 15.404-1(b)(2)(i) for support. (emphasis in original). As indicated in the Administrative Record, however, the '276 Solicitation was designated as "a commercial item acquisition using Simplified Acquisition Procedures under the authority of FAR 13.5 Simplified Procedures for Certain Commercial Items." Even if FAR Part 15 was applicable, protestor's reliance on FAR Part 15 is unavailing. As discussed above, FAR Part 15 allows a Contracting Officer to evaluate whether the submitted price was fair and reasonable using different information sources including comparison of the

submitted prices with historical prices and the IGCE. Should the Contracting Officer find the bids to not be fair and reasonable, as he did for all the bids received in response to the '181 Solicitation, the Contracting Officer is not restricted to evaluating prices solely from within the SDVOSB context when deciding to solicit or cancel the '181 Solicitation and establishing the '276 Solicitation as a 100% small business set-aside instead. See generally 48 C.F.R. § 15.404-1.

FAR Part 13 grants a contracting officer discretion to evaluate the fairness and reasonableness of prices based on comparisons with the IGCE, incumbent pricing, market research, and personal experience with similar contracts. This includes the flexibility and discretion to evaluate factors not related to SDVOSBs in determining whether an offeror's price proposal was fair and reasonable. In protestor's earlier bid protest for the '276 Solicitation denied by the GAO, the GAO stated:

> Neither 38 U.S.C. § 8127(d) nor its implementing regulations require the contracting officer to utilize a specific type of analysis to decide whether the agency can reasonably expect to make an award to an SDVOSB at a fair and reasonable price. By their terms, section 13.106 and 15.404 of the FAR apply where an agency is evaluating proposed prices in response to a competition. They are not mandated where, as in this case, an agency is conducting market research to assess the propriety of a set-aside decision.

> Moreover, it defies logic that an agency would be limited to utilizing pricing from a competition that was cancelled because all the prices were found to be unreasonably high as the yardstick for reasonableness. Rather, under such circumstances a contracting officer has the discretion to reasonably utilize other price analysis techniques such as consideration of an IGCE when making a set-aside decision.

In re: Veteran Shredding, LLC, B-417399, 2019 WL 2490468, at *4 (footnotes omitted) (internal citations omitted). This court agrees with the GAO that the Contracting Officer, pursuant to either FAR Part 13 or Part 15, was not required to conduct comparisons solely within the SDVOSB context to determine fair and reasonable prices.

The Contracting Officer's actions were not arbitrary or capricious when he acted within his discretion to evaluate prices via market research in determining that the '276 Solicitation should be a 100% small business set-aside. Following the cancellation of the '181 Solicitation, the Contracting Officer conducted multiple rounds of market research. In March 2018 and January 2019, the Contracting Officer searched government databases using parameters to narrow down the possibilities of VOSB, SDVOSB, and small businesses which may be capable of fulfilling the MVAHCS document destruction services contract. The March 2018 market research produced a shortlist of VOSBs, which, after reviewing, the Contracting Officer found none could perform the requirements of the contract. A search for small businesses which might be able to perform the MVAHCS document destruction services contract generated potentially, more positive results than the search for VOSBs using the same NAICS and SIN codes.

The Contracting Officer issued a Sources Sought notice in June 2018 which elicited responses from two SDVOSBs and two small businesses. The two SDVOSB

responses came from [redacted] and protestor, vendors which had submitted some of the high bids for the '181 Solicitation. Since the June 2018 Sources Sought was only three months after the issuance and cancellation of the '181 Solicitation, it was not unreasonable for the Contracting Officer to expect that the document destruction services market had not significantly changed in the intervening three months. Additionally, the Contracting Officer considered [redacted]'s and protestor's behaviors during the '181 Solicitation. The Contracting Officer requested price revisions following the initial submission of proposals in response to the '181 Solicitation because "none of the quotations received were fair and reasonable because all pricing significantly exceeded the IGCE." The Contracting Officer "suggested that the 5 offerors review the incumbent contractor's pricing (Shred N Go) and provide final revised pricing" "[i]n an effort to obtain fair and reasonable pricing" for the '181 Solicitation. [redacted] did not decrease its bid after the Contracting Officer made his request and its proposed price remained [redacted]% over the IGCE. Protestor decreased its bid, but still remained [redacted]% above the IGCE for the '181 Solicitation. The Contracting Officer therefore had a reasonable expectation that [redacted] and protestor would not "submit fair and reasonable pricing that fell within the funding allocated for the re-solicitation of the document destruction services requirement for MVAHCS."

For the subsequent market research in January 2019, the Contracting Officer issued another Sources Sought notice for the MVAHCS document destruction services contract on January 23, 2019. [redacted], [redacted], and one small business responded. As discussed above, [redacted] did not decrease its bid during the course of the '181 Solicitation and [redacted]'s had a history of high bids for document destruction services solicitations at the Black Hills, St. Cloud, and Fargo VA Healthcare Systems. As a result, the Contracting Officer did not act arbitrarily or capriciously when he concluded he could not reasonably expect two or more VOSBs and SDVOSBs to make acceptable offers based on the bidding patterns received for the '181 Solicitation, informal outreach, and responses to two different Sources Sought notices.

Although the protestor alleges that new market research was done but "the IGCE remained entirely unmodified," there is no suggestion in the briefs or the Administrative Record that the Contracting Officer's approach was improper. The Contracting Officer could reasonably conclude from his market research that two or more small businesses could submit bids for the MVAHCS document destruction services contract. The Contracting Officer's search through government databases revealed more small businesses than VOSBs or SDVOSBs which could potentially meet the contract requirements. Additionally, two small businesses, [redacted] and [redacted] responded to the June 2018 Sources Sought notice and were evaluated to be capable of providing the requisite document destruction services. The incumbent small business vendor, Shred-N-Go, twice expressed interest. The Contracting Officer also had knowledge about the capabilities of five small businesses holding VA Healthcare document destruction contracts in his geographic procurement area. The Contracting Officer, therefore, properly could conclude that there was a reasonable expectation that two or more small businesses, which could submit bids such that the '276 Solicitation could be set-aside for small businesses.

Protestor alleges the IGCE relied on an unreasonable, incumbent, contract price of $44,000.00 and argues there is "no analysis regarding the reasonableness of Shred-N-Go's contract price." Protestor's allegation is not supported by the Administrative Record. Although Amendment 001 to the '276 Solicitation stated the incumbent's contract was worth $44,000.00, the base year estimates for the '181 and '276 Solicitations were $[redacted] and $[redacted], respectively. Additionally, $[redacted] was requisitioned on January 8, 2019 for incumbent Shred-N-Go in Requisition 618-19-2-6133-0149 for a year of "SERVICE/DOCUMENT DESTRUCTION." (capitalization in original). Consequently, protestor does not persuasively argue why the IGCE necessarily relied on an incumbent price of $44,000.00 or why the reliance on incumbent pricing was unreasonable.

Protestor tries to rely on Nutech Laundry & Textile, Inc. v. United States, 56 Fed. Cl. 588 (2003) to argue the IGCE "failed to demonstrate the basis for the estimate," was not accompanied by "a description of cost figures upon which it is based nor the basis" and, therefore, was inappropriately used as a point of price comparison. The above-captioned bid protest is distinguishable from Nutech. Unlike in Nutech, in which the independent government estimate (IGE) was unaccompanied by substantiation, the IGCE in this bid protest, although not exhaustively substantiated, stated it incorporated past contract pricing, the GSA Federal Supply Schedule, and informal vendor quotes. See id. at 594-95.

Protestor makes a conclusory allegation that SDVOSBs historically bid at higher rates and since the IGCE does not distinguish if the historic contract prices used as a factor in the preparation of the IGCE, the IGCE was invalid and claims that "[w]hether the above-referenced [referencing vendor shredding prices from the GSA eLibrary] prices are accurate or feasible is of no matter. What is important is the VA's improper yet steadfast reliance on an IGCE that: (1) lacks basic documentation and detail; and (2) does not reflect easily-ascertained price information." Protestor does not explain why the use of an IGCE with contract pricing from small businesses is a material defect. If the small businesses were performing similar services, as was the case in the shredding contracts, it stands to reason that the Contracting Officer also could reasonably rely on the small businesses' pricing for the IGCE. As indicated above, protestor has the burden of proof to show that the evidence demonstrates that the Contracting Officer's conduct lacked a reasonable basis for the price analysis conducted. Protestor does not persuasively substantiate why the Contracting Officer's use of IGCEs in cancelling the '181 Solicitation or setting the '276 Solicitation as a 100% small business set-aside was defective. See, e.g., URS Fed. Servs., Inc. v. United States, 142 Fed. Cl. 392 406 (2019) ("Because [protestor] URS does not provide any basis for the Court to question the validity of the historical data reflected in the IGE, the Court finds unpersuasive URS's contention that a remand is required to allow NASA to review the IGE and supply back-up notes and other documentation to support it."). When the VA documents past contract pricing, the GSA Federal Supply Schedule, and informal vendor prices were utilized in forming the IGCE, the IGCE is sufficiently documented and not "drawn out of thin air." Id.

Moreover, the Contracting Officer was not arbitrary or capricious when he utilized historic price and incumbent price comparisons in determining that all submitted SDVOSB quotes in response to the '181 Solicitation exceeded the IGCE and when he cancelled the '181 Solicitation. In the case of MED Trends, Inc. v. United States, a judge of this

court found that the Department of Labor's use of "historical data from previous similar contracts" for the maintenance and operation of the Department of Labor's Integrated Management Information System was appropriate to determine whether an IGCE and the price evaluation for reasonableness was appropriate under FAR Part 15. See MED Trends, Inc. v. United States, 102 Fed. Cl. 1, 7 (2011). Similarly, in a case concerning fitting, tailoring, and garment-pressing services, a judge of this court found that cost comparisons to an IGCE based on historical costs was reasonable and satisfactory under FAR Part 15. See Tech Sys., Inc. v. United States, 98 Fed. Cl. 228, 264 (2011). In the above-captioned bid protest, incumbent Shred-N-Go's pricing was utilized within the IGCE as a point of comparison. Although protestor argues Shred-N-Go's price was too low because SDVOSBs historically bid at higher rates than non-veteran-owned small businesses, the Administrative Record does not contain evidence that Shred-N-Go's pricing or historical inputs were unreasonably low so as to be arbitrary.

The Contracting Officer's determination that SDVOSBs could not meet the Rule of Two after comparing the submitted SDVOSB bids to the IGCE was not arbitrary or capricious. After revision, the quote submitted in response to the '181 Solicitation for the base and option years remained [redacted]% to [redacted]% over the IGCE. Therefore, the Contracting Officer had a reasonable basis to determine that SDVOSBs could not meet the Rule of Two when all quotes received for the '181 Solicitation exceeded the IGCEs for both the '181 and '276 Solicitations by a large margin. In Veterans Contracting Group, Inc., in which the protestor was represented by the same counsel who is counsel of record in the above-captioned bid protest under review, the Federal Circuit affirmed the decision of this court that the cancellation of a roof replacement solicitation was reasonable because all of the bids received were higher than the government estimate. The Federal Circuit stated:

> VCG [Veterans Contracting Group] has not shown that the contracting officer lacked any rational basis for cancelling the roof replacement solicitation. First, the record discloses a reasonable motivation for cancellation. . . . The only two acceptable bids proposed costs significantly [30%] higher than the government's estimate for the project. Thus, the contracting officer rationally determined that these prices were unreasonable.

Veterans Contracting Grp., Inc. v. United States, 920 F.3d at 806-07. The SDVOSB bids received in response to the '181 Solicitation were even higher percentage-wise over the government estimate than the bids received in Veterans Contracting Group, Inc. The Federal Circuit discussed that a solicitation cannot be cancelled "solely to satisfy an agency's whim" such as the cancellation of a solicitation as a result of an agency's displeasure with the parcel of land selected for an agency's headquarters. Id. at 806 (discussing Parcel 49C Ltd. P'ship v. United States, 31 F.3d 1147 (Fed. Cir. 1994)). The cancellation of a solicitation may be done only if there is "a compelling reason to reject all bids and cancel the invitation." Id. (citing 48 C.F.R. § 14.404-1(a)(1)). The Federal Circuit further stated:

> A compelling reason may exist when "[a]ll otherwise acceptable bids received are at unreasonable prices." [48 C.F.R.] § 14.404-1(c)(6). VCG's

bid was not acceptable because VCG was not listed in the VetBiz database when bidding closed. <u>See</u> 38 U.S.C. § 8127(e). The only two acceptable bids proposed costs significantly higher than the government's estimate for the project. Thus, the contracting officer rationally determined that these prices were unreasonable. Under the circumstances, he had a compelling reason to request cancellation.

<u>Veterans Contracting Grp., Inc. v. United States</u>, 920 F.3d. at 806-07. Therefore, since bids higher than the government estimate can be considered a compelling reason to cancel a solicitation and the Administrative Record does not show any pretextual action on the part of the Contracting Officer against protestor, the Contracting Officer was not arbitrary or capricious in designating the '276 Solicitation to be a 100% small business set-aside in the above-captioned bid protest.

## CONCLUSION

For the reasons stated above, defendant's cross-motion for judgment upon the Administrative Record is **GRANTED** and protestor's motion for judgment upon the Administrative Record is **DENIED**. Protestor's complaint is **DISMISSED**.

**IT IS SO ORDERED.**

s/ Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**